**UNITED STATES of America**

v.

**Parris H. PHILLIPS, Kevin Smith, London Williams, Michael Davis, and Devon Brown, Defendants.**

**Crim. No. 89–307–K.**

United States District Court, D. Massachusetts.

Feb. 1, 1990.

Michael Pelgro, for U.S.

Michael Liston, Boston, Mass., for Parris H. Phillips.

John E. Conwell, Boston, Mass., for John Tibbs.

Norman Zalkind, Boston, Mass., for Kevin Smith.

Mitchell Benjoya, Newton, Mass., for London Williams.

James Krasnoo, Boston, Mass., for Troy Smith.

James Dilday, Boston, Mass., for Michael Davis.

Henry Owens and Kevin Nixon, Boston, Mass., for Devon Brown.

## MEMORANDUM AND ORDER

KEETON, District Judge.

An eleven count indictment dated December 11, 1989, charges Parris Phillips, Kevin Smith, London Williams and Michael Davis with conspiracy, unlawful interstate transportation and receipt of firearms, and aiding and abetting such unlawful transportation and receipt, in violation of 18 U.S.C. §§ 2, 371, 922(a)(3) and 922(a)(5). The

same indictment also charges Devon Brown with possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. § 922(g).*

At the defendants' initial appearance on December 14, 1989, the government moved for a detention hearing pursuant to 18 U.S.C. § 3142(f). Magistrate Collings held that hearing on December 18 and 19, 1989, and subsequently ruled that only defendant Brown would be committed to pretrial detention.

Now before the court are: (1) the government's motion pursuant to section 3145(a) to revoke the Magistrate's Order of pretrial release for defendants Phillips, K. Smith, Williams and Davis (filed December 26, 1989); and (2) defendant Brown's motion pursuant to section 3145(b) to revoke the Magistrate's Order of pretrial detention (filed December 21, 1989).

## I. Scope of Review

Both motions are before this court pursuant to section 3145, which is entitled "[r]eview and appeal of a release or detention order":

(a) Review of a release order.—If a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions or release; and

(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

(b) Review of a detention order.—If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

(c) Appeal from a release or detention order.—An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly.

18 U.S.C. § 3145.

This statute, in paragraph (a), requires the government to seek "[r]eview of a release order" (as phrased in the heading), or determination of a "motion for revocation of the order" (as phrased in the text), by the district court, before the government may make an "appeal from a release ... order," paragraph (c), to the court of appeals. Similarly, paragraph (b) of the statute requires the defendant to seek "[r]eview of a detention order" (as phrased in the heading), or determination of a "motion for revocation or amendment of the order" (as phrased in the text), by the district court, before the defendant may make an "appeal from a ... detention order," paragraph (c), to the court of appeals. The statute thus provides for two separate levels of review, by right, of a magistrate's order of pretrial release or detention. *See* 18 U.S.C. § 3731 and 28 U.S.C. § 1291 (authorizing appeal to court of appeals only upon decision of district court, not from magistrate).

In mandating this two-tier process of review, however, Congress did not explicitly specify the scope of the first level of "[r]eview"—that is, the scope of the district court's consideration of the "motion for revocation or amendment of the [magistrate's] order." The legislative history is similarly devoid of explicit guidance with respect to the level of deference, if any, that a district court should accord to a

---

* The indictment also charges John Tibbs and Troy Smith who are not currently before the court. The charges against defendant Tibbs were dismissed on the government's motion on January 16, 1990 (Docket No. 76). Defendant T. Smith, who is serving a state sentence until September 1990, waived a detention hearing at this time (Docket No. 43).

magistrate's findings of fact. S.Rep. No. 225, 98th Cong., 2d Sess. 29–30, *reprinted in* 1984 Code Cong. & Admin.News 3182, 3212–13.

■ Nevertheless, the structure of this statute provides some guidance. First, as noted above, the statute provides for two separate levels of reconsideration by right —first, "[r]eview" by the district court, and then, "appeal" to the court of appeals. Except to the extent that more judicial officers of higher authority were being added to the decisionmaking process, the two-tier reconsideration would be redundant if the scope of reconsideration were identical in both instances—if both the district court and the court of appeals were directed to review the magistrate's findings of fact under a "clearly erroneous" standard. Although the issue is debatable, I conclude that by providing for two levels of review, Congress manifested an intention for the district court to review the magistrate's factfindings under a standard less deferential than the "clearly erroneous" standard.

Moreover, Congress used the term "appeal" in subsection (c), which carries with it certain connotations about the scope of appellate review and the use of the "clearly erroneous" standard, but not in subsections (a) and (b), where Congress instead used the term "[r]eview." As the court noted in *United States v. Smith*, 87 F.R.D. 693 (E.D.Cal.1980), *aff'd*, 734 F.2d 22 (9th Cir.), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 142 (1984), a case interpreting a similar review provision under the predecessor to section 3145:

> "The legislature must be presumed to know the meaning of words, and to have used the words advisedly." 73 Am. Jur.2d 393. To paraphrase myself, "Congress knew how to say [appeal] when it meant it, having used [that] precise word [...] in the immediately [subsequent] subparagraph."

*Id.* at 699 (paraphrasing *United States v. Salsedo*, 477 F.Supp. 1235, 1241 (E.D.Cal. 1979), *vacated on other grounds sub nom.*, *United States v. Torres*, 622 F.2d 465 (9th Cir.1980)) (brackets in *Smith* opinion).

Reading all three paragraphs and their statutory headings together, I conclude that "[r]eview" is used in paragraphs (a) and (b) in a broad sense that includes not only "appeal" (which is used in paragraph (c) in a narrower, traditional sense), but as well other forms of reconsideration by standards that are less deferential to factfindings than are the standards traditionally applied in appeals.

■ Although the use of the term "[r]eview" in subsections (a) and (b) implies that the district court should not use the "clearly erroneous" standard in reviewing the magistrate's findings of fact, it also implies that the court should not, at the other extreme, ignore the magistrate's order and written findings and conduct the detention hearing entirely anew. Of course, in any appeal or other form of review, the reviewing court, examines the legal conclusions anew, and I do so as to the Magistrate's conclusions of law below. As to a magistrate's factfindings, however, the reasonable inference from Congress' use of the term "[r]eview," instead of, for example, explicitly providing for a *de novo* hearing, is that the court's starting point should be the magistrate's findings, and that the court should then "[r]eview" the magistrate's findings in light of the court's independent "[r]eview," or reconsideration, of the evidence presented to the magistrate.

In a trio of opinions concerning the scope of district court review of a section 3145 motion, the Eleventh Circuit prescribed use of a similar standard of review lying between a *tabula rasa* detention hearing and review by the "clearly erroneous" standard. The court first held that, when reviewing a magistrate's order regarding pretrial detention, a district court must "undertake an *independent* review of the[ ] case[ ]." *United States v. Hurtado*, 779 F.2d 1467, 1480 (1985), *reh'g denied*, 788 F.2d 1570 (11th Cir.1986) (emphasis in original). This requirement, the court subsequently held, does not require the court to conduct a *de novo* hearing; it only requires that "the court exercise independent consideration of all facts properly before

it." *United States v. Gaviria,* 828 F.2d 667, 670 (11th Cir.1987). When it revisited this issue for the third time, the court summarized the applicable law as follows:

As both *Hurtado* and *Gaviria* teach, in this situation [of a motion pursuant to section 3145(b)], the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary.

*United States v. King,* 849 F.2d 485, 490 (11th Cir.1988).

I too conclude that a district court, when reviewing a magistrate's order of pretrial detention, and also when reviewing a magistrate's order of pretrial release, must make an independent review of the evidence, but need not conduct a *de novo* detention hearing. Accordingly, I have reviewed the transcripts of the detention hearing held before the Magistrate, and have reviewed the evidence that was presented at that hearing. In addition, I held a hearing on the parties' motions on January 19, 1990, and offered the parties an opportunity to present any additional evidence at that hearing. *See United States v. Freitas,* 602 F.Supp. 1283, 1293 (N.D.Cal.1985) (utilizing same procedure); *United States v. Ramey,* 602 F.Supp. 821, 822 (E.D.N.C.1985) (same); *United States v. Allen,* 605 F.Supp. 864, 867 (W.D.Pa. 1985) (same). Because the parties did not offer any additional evidence, I base my findings on the evidence that was presented to the Magistrate.

## II. Pretrial Preventive Detention

In the Bail Reform Act of 1984, as amended, 18 U.S.C. §§ 3141 *et seq.,* Congress provided for pretrial detention of a defendant, regardless of whether that defendant poses a risk of flight (the traditional justification for pretrial detention), if the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required *and the safety of any other person and the community.*" 18 U.S.C. § 3142(e) (emphasis added).

Congress specified six circumstances in which a pretrial detention hearing may be held, and in which such detention may be warranted—four related to dangerousness or risk of harm, 18 U.S.C. § 3142(f)(1)(A)–(D), one related to risk of flight, 18 U.S.C. § 3142(f)(2)(A), and one related to risk of obstruction of justice, 18 U.S.C. § 3142(f)(2)(B). Relevant for purposes of these motions is only section 3142(f)(1)(A), which authorizes a pretrial detention hearing, on the government's motion, if the "case ... involves ... a crime of violence."

After the hearing is held, the court is directed to determine whether "no condition or combination of conditions will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e). A determination of dangerousness, however, may only be made if, having held the detention hearing because the case *appeared to* "involve[ ]" one of the six grounds listed in section 3142(f)(1), the court determines that the case does *in fact* "involve[ ]" one of those six grounds. *United States v. Ploof,* 851 F.2d 7, 11 (1st Cir.1988) ("where [pretrial] detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)") (citing the legislative history, S.Rep. No. 225, 98th Cong., 2d Sess. 20, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3203, which states: "circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial").

The issue critical to these motions is whether, as to each defendant, this "case ... involves ... a crime of violence," 18 U.S.C. § 3142(f)(1)(A), and if so, whether, with respect to that defendant, "no condition or combination of conditions [of release] will reasonably assure ... the safety of any other person and the community," 18 U.S.C. § 3142(e).

Section 3156(a)(4) provides the following definition of the term "crime of violence":

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

■ To the extent that the phrase "crime of violence" and the definition quoted above is ambiguous, I conclude that a court must give the phrase a narrow interpretation for several reasons. When Congress authorized pretrial preventive detention—that is, pretrial detention for grounds other than risk of flight—Congress legislated, and the President approved, a dramatic departure from previously existing law. See S.Rep. No. 225, 98th Cong., 2d Sess. 3, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3185–86 ("[t]he adoption of these changes marks a significant departure from the basic philosophy of the [previous] Bail Reform Act, which is that the sole purpose of bail laws must be to assure the appearance of the defendant at judicial proceedings"). Moreover, Congress did not authorize pretrial preventive detention whenever an arrestee is determined to be dangerous, but rather, only in cases involving at least one of the following six limited circumstances: (1) a crime of violence; (2) an offense for which the maximum sentence is life imprisonment or death; (3) an offense for which a maximum term of imprisonment of ten years or more is prescribed in certain drug offenses; (4) any felony where the arrestee has also previously been convicted of two or more of the offenses described in circumstances (1)–(3), supra; (5) a serious risk of flight; and (6) a serious risk that the arrestee will obstruct or attempt to obstruct justice, or threaten, injure or intimidate, or attempt to threaten, injure or intimidate a prospective witness or juror. 18 U.S.C. § 3142(f); Ploof, 851 F.2d at 10. As the legislative history demonstrates, Congress limited pretrial preventive detention to these six circumstances because Congress was especially concerned with

a small but identifiable group of particularly dangerous defendants as to whom neither the impos[i]tion of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial.

S.Rep. No. 225, 98th Cong., 2d Sess. 6–7, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3189.

The Supreme Court's pronouncements with respect to pretrial preventive detention provide another reason for giving the definition of "crime of violence" a narrow rather than an expansive interpretation. The Supreme Court, in holding that the Bail Reform Act of 1984 was not unconstitutional on its face, explicitly stated that pretrial preventive detention was a "carefully limited exception" to the " 'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial":

In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception. The Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel. The numerous procedural safeguards detailed above must attend this adversary hearing. We are unwilling to say that this congressional determination, based as it is upon that primary concern of every government—a concern for the safety and indeed the lives of its citizens—on its face violates either the Due Process Clause of the Fifth Amendment or the Excessive Bail Clause of the Eighth Amendment.

United States v. Salerno, 481 U.S. 739, 749, 755, 107 S.Ct. 2095, 2102, 2105, 95 L.Ed.2d 697 (1987).

■ Interpreting the phrase "crime of violence" and its definition narrowly, I con-

clude that section 3156(a)(4)(A) is inapplicable to the instant case. In none of the crimes charged—conspiracy, unlawful interstate transportation and receipt of firearms, aiding and abetting such transportation and receipt, and possession of a firearm by a felon—is the "use, attempted use, or threatened use of physical force" an "*element* of the offense." 18 U.S.C. § 3156(a)(4)(A) (emphasis added). Accordingly, each defendant's "case ... involves ... a crime of violence" only if the case falls within the ambit of section 3156(a)(4)(B)—that is, if his "case ... involves" "a felony ... that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B). I now turn to that analysis.

### III. Defendants Phillips, K. Smith, Williams and Davis

Defendant Phillips is implicated in nine counts of the indictment: Count One (Conspiracy); Counts Two, Four, Six and Nine (Unlawful Interstate Transportation and Receipt of Firearms); and Counts Three, Five, Seven and Ten (aiding and abetting the offenses charged in Counts Two, Four, Six, Eight and Nine). Defendant K. Smith is implicated in six counts of the indictment: Count One (Conspiracy); Counts Two and Four (Unlawful Interstate Transportation and Receipt of Firearms); and Counts Three, Five and Ten (aiding and abetting the offenses charged in Counts Two, Four, Eight and Nine). Defendant Williams is implicated in three counts of the indictment: Count One (Conspiracy); Count Nine (Unlawful Interstate Transportation and Receipt of Firearm); and Count Ten (aiding and abetting the offenses charged in Counts Eight and Nine). Defendant Davis is implicated in three counts of the indictment: Count One (Conspiracy); Count Eight (Unlawful Interstate Transportation and Receipt of Firearm); and Count Ten (aiding and abetting the offenses charged in Counts Eight and Nine).

As noted in Part II, *supra*, under the circumstances of this case, each defendant may be detained before trial only if his "case ... involves ... a crime of violence," 18 U.S.C. § 3142(f)(1)(A), defined as "a felony ... that, *by its nature*, involves a *substantial* risk that physical force against the person or property of another may be used *in the course of* committing the offense." 18 U.S.C. § 3156(a)(4)(B) (emphasis added). Also as noted in Part II, *supra*, this definition, to the extent that it is ambiguous, should be construed narrowly rather than expansively.

■ Interpreting this definition, I conclude that an offense is a "crime of violence" only if the risk of violence is inherent in the *nature* of the crime, regardless of whether there was a risk of violence, or any actual violence, during the commission of the offense under the facts of the particular case. *United States v. Johnson*, 704 F.Supp. 1398, 1400 (E.D.Mich.1988) ("[e]ach generic offense must be categorized as either a 'crime of violence' or not a crime of violence; there cannot be a justification for *ad hoc* classification of criminal activity"). Thus, although the indictment alleges that one purpose of the conspiracy was to arm defendants against the Intervale Street gang, and that a significant number of the guns transported have not yet been recovered, these facts, specific to this case, are irrelevant to the legal determination of whether these offenses, "*by [their] nature*, involve[ ] a substantial risk that physical force ... may be used in the course of committing the offense." Likewise irrelevant, on the other hand, is the fact that the government does not charge that physical force was used "in the course of committing the offense[s]" charged in this case. The matter is to be viewed prospectively and generically. That is, the question is not what happened in this case but what is the *nature* of the offense charged, as it bears on the risk of use of physical force in the course of the crime.

In assessing the nature of the offense, the offense may be classified as a crime of violence only if the risk that physical force will be used is great enough to satisfy a threshold test of substantiality, which is not precisely defined in the statute. More-

over, the risk must concern the use of force *during* "the course of committing the offense," not after or as a result of the commission of the offense.

 None of the offenses charged against these defendants, "by its nature, involves a substantial risk that physical force may be used in the course of committing the offense." Although there is some risk that, in the course of transporting firearms through interstate commerce and receiving such firearms, physical force will be used (*e.g.*, if the defendants were apprehended during the transportation), I conclude that there is not a *"substantial risk that physical force against the person or property of another may be used in the course of"* the transportation and receipt. There is a more significant risk that physical force will be used *after* the unlawful transportation and receipt—that is, a risk that the defendants, now armed with the guns that they have transported, will commit acts of violence—but these defendants have not been charged in this indictment with use of firearms, or even with possession of firearms. Risks of violence arising subsequent to the commission of the offense are not within the ambit of section 3156(a)(4)(B)'s definition of crimes of violence.

It follows that, because the offense of transporting and receiving firearms does not "involve[ ]," by its nature, a substantial risk of violence, conspiracy to transport firearms in interstate commerce and to receive such firearms, and aiding and abetting such transportation and receipt, also do not "involve[ ] a substantial risk" of violence. That is, as a matter of law, conspiracy to transport and receive firearms, and of aiding and abetting such transfer and receipt, are not crimes that, *"by [their] nature,* involve[ ] a substantial risk that physical force may be used in the course of"* the conspiracy or of the aiding and abetting.

Accordingly, none of the "case[s]" of these four defendants' "involves ... a crime of violence." Because this is the only justification offered for pretrial detention of these defendants, pretrial preventive detention is not warranted. The government's motion must be denied.

### IV. Defendant Brown

Defendant Brown, who is currently in custody pursuant to the Magistrate's Order of pretrial detention, is implicated in only one count of the indictment: possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. § 922(g). Although the indictment also alleges that the firearm in question had "previously travelled in interstate commerce," the grand jury did not charge Brown with transporting this or any firearm in interstate commerce, with receiving this or any firearm that had been shipped in interstate commerce, with conspiring to transport or receive this or any firearm, or with aiding and abetting any such transportation or receipt.

### A. Crime of Violence

As noted in Part II, *supra,* under the circumstances of this case, defendant Brown may be detained pending trial only if *his case* (that is, the offense with which he is charged) "involves ... a crime of violence." Thus, the statute authorizes detention of this defendant only if (1) possession of a firearm by a felon is a felony, and (2) possession of a firearm by a felon, *"by its nature,* involves a *substantial* risk that physical force may be used *in the course of"* the possession. 18 U.S.C. § 3156(a)(4)(B) (emphasis added).

The first prong of the test is easily met—it is undisputed that the offense of possession of a firearm by a felon is a felony. 18 U.S.C. § 924(a)(2).

The second prong, I conclude, is also met. Those courts that have considered whether the offense of possession of a firearm by a felon, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of the [possession]" have concluded that it does. *United States v. Jones,* 651 F.Supp. 1309 (E.D. Mich.1987); *Johnson,* 704 F.Supp. 1398; *United States v. Butts,* Crim. No. 89–303–Z (D.Mass. Nov. 6, 1989) (Cohen, M.) (ordering pretrial preventive detention) and

(D.Mass. Dec. 28, 1989) (Zobel, J.) (denying defendant's motion to revoke pretrial preventive detention order of magistrate). Such possession by a felon is, by its nature, a crime of violence for several reasons. A felon is more likely to know that such possession is illegal and is more likely to be possessing a firearm with willful disregard for the legal obligations imposed upon him as a convicted felon. This also makes it more likely that he will commit another crime, and that he will do so with a firearm in his possession. Also, possession of a firearm is an on-going offense, and may lead to the use of the firearm. *See Johnson*, 704 F.Supp. at 1401; *Jones*, 651 F.Supp. at 1310.

Categorizing possession of a firearm by a felon as a crime of violence is consistent with Congress' manifested intention in passing Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, which included the predecessor to section 922(g). Congress prohibited the possession of firearms by felons because it believed that possession of a firearm is particularly dangerous when it is by a convicted felon. As Senator Long, the sponsor of Title VII, stated, felons, among others,

> have demonstrated that they are dangerous, or that they may become dangerous. Stated simply, they may not be trusted to possess a firearm without becoming a threat to society.

Remarks of Senator Long, *quoted in United States v. Bass*, 404 U.S. 336, 354–55, 92 S.Ct. 515, 526, 30 L.Ed.2d 488 (1971) (Blackmun, J., dissenting) (quoting from 114 Cong.Rec. 14,773–14,774 (1968)); *see also* Magistrate Collings' Memorandum and Order concerning defendants Phillips, K. Smith, Williams and Davis (Docket No. 49) at 7–9.

For the foregoing reasons, I too conclude that possession of a firearm by a felon, "by its nature, involves a substantial risk that physical force may be used in the course of committing the offense." Accordingly, I conclude that defendant Brown's "case ... involves ... a crime of violence," and that the statute authorizes, upon the requisite additional determinations, an order of pretrial preventive detention in this case.

## B. Risk of Flight

I must next determine whether "no condition or combination of conditions will reasonably assure the appearance of [defendant Brown] as required." 18 U.S.C. § 3142(e).

As Magistrate Collings determined, and as my independent consideration of the evidence affirms, the defendant has lived in Boston his entire life, does not have a passport, has little in the way of financial resources, and has a part-time job as a disc-jockey for a rap-music group called the Treacherous Devastating Supreme Mob. Also, although defendant Brown is no stranger to the criminal justice system, the evidence demonstrates that he has always appeared at court proceedings when required. Trans. (Dec. 18, 1989) at 97; trans. (Dec. 19, 1989) at 2–44, 2–126 to 2–127. Accordingly, I find that there are conditions of release that would reasonably assure defendant Brown's appearance. *See* 18 U.S.C. § 3142(g)(3)(A).

## C. Dangerousness

The only remaining issue is whether "no condition or combination of conditions will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e). Because there is no evidence in this case of any risk of harm to any particular individual, I need only consider the danger of harm, if any, to the community.

In passing the pretrial preventive detention provisions of the Bail Reform Act of 1984, Congress provided for a heightened standard of proof because of "the importance of the interests of the defendant which are implicated in a pretrial detention hearing." S.Rep. No. 225, 98th Cong., 2d Sess. 22, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3205.

> The facts the judicial officer uses to support a finding ... that no condition or combination of conditions will reasonably assure the safety of any other person

and the community shall be supported by *clear and convincing evidence.*

18 U.S.C. § 3142(f) (emphasis added).

Although requiring that a determination of dangerousness be supported by clear and convincing evidence, Congress also recognized that some identifiable kinds of circumstances are more likely than others to support a finding that pretrial release of a defendant will endanger the community. With respect to these types of circumstances, Congress provided a statutory rebuttable presumption of dangerousness. That presumption arises: (1) in cases involving certain drug offenses, and (2) in cases involving defendants with a recent history of criminality while on pretrial release. In these situations, the combined force of (a) the grand jury's findings of probable cause of commission of the offense at issue, and (b) the statute's rebuttable presumption of dangerousness, is sufficient to support a finding by clear and convincing evidence absent anything else in the record. Of course, the presumption is rebuttable, and, as a practical matter at least, if not also in a formal legal sense, the burden of production shifts to the defendant once the presumption arises. Nevertheless, the burden of *persuasion* remains on the government throughout. *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir.1985).

■ The presumptions of dangerousness provided by the statute are designed to predict, albeit not completely reliably, the types of circumstances in which pretrial release of a defendant will be dangerous to the community. A finding of dangerousness, however, must ultimately be based on the evidence regarding the particular defendant before the court, and not on evidence regarding types of circumstances, or groups or types of defendants who are like the individual defendant before the court in some way other than those identified in the statute. Data may inform us about group behavior, and may even inform us about predictable behavior of most individuals in a group. Data ordinarily tell us little, if anything, however, about how a single individual in that group will behave in the future. Indeed, though we often hear and read of "demographic data," the very idea of converting that concept from the plural ("data") to the singular ("datum") is not only strange to the ear and eye but perhaps as well is self-contradictory because there is nothing demographic about a single individual. Accumulating demographic or other forms of statistical data involves viewing many persons, classifying, and counting them. In contrast, the factfinding function of the court in a pretrial detention decision must be focused on one individual—the defendant—and the court must view that defendant as an individual.

Moreover, a court must observe some constraints with respect to characteristics of the individual the court treats as relevant. I conclude that even though data showing higher rates of crime in some metropolitan areas may appropriately be collected and used for some types of governmental decisionmaking—for example, allocation of investigative resources or resources for educational programs aimed at protection of persons and property—they are not to be applied by a court in a way that causes a defendant who lives in such an area to be held in pretrial preventive detention on account of factors beyond his control. That is, these data may be used and applied in governmental decisionmaking affecting groups of individuals living in these particular areas, but they may not be used in judicial decisionmaking regarding pretrial preventive detention.

The imperative that the court view each defendant as an individual is, moreover, a fundamental premise implicit in the Bill of Rights.

This imperative is also explicit in the congressional mandates of section 3142. For example, in making the determination with respect to dangerousness, the court is directed to consider "the nature and seriousness of the danger to any person or the community that would be posed by *the person's* release." 18 U.S.C. § 3142(g)(4) (emphasis added). Similarly, the statute directs the court to consider "the weight of the evidence against *the person* " and "the history and characteristics of *the person.*" 18 U.S.C. § 3142(g)(3)–(4) (emphasis added).

Because this case does not "involve[ ]" a drug offense, a rebuttable presumption of dangerousness arises only if the court finds that Brown has a recent history of committing certain types of offenses while on pretrial release. More specifically, the statute provides for a rebuttable presumption of dangerousness if:

(1) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section [that is, "(A) a crime of violence; (B) an offense for which the maximum sentence is life imprisonment or death; [or] (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq.*), or section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924a of title 18 of the United States Code,"], or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed; and

(2) the offense described in paragraph (1) of this subsection was committed while the person was on release pending trial for a Federal, State, or local offense; and

(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1) of this subsection, whichever is later.

18 U.S.C. § 3142(e).

In this case, defendant Brown has been convicted of several state offenses within the last five years, although never one for which the maximum sentence was life imprisonment or death. Also, the drug offenses of which Brown has been convicted were not offenses for which a maximum term of imprisonment of ten years is prescribed in the drug trafficking offenses listed in section 3142(f)(1)(C). Accordingly, a rebuttable presumption of dangerousness arises only if: (1) Brown has been convicted of a "crime of violence," *and* (2) he

committed that crime of violence while "on release pending trial for a Federal, State, or local offense." 18 U.S.C. § 3142(e)(1)–(2).

The evidence offered at the detention hearing indicates that defendant Brown was arrested in August 1987 for possession of cocaine with intent to distribute, receiving a stolen motor vehicle, and operating a motor vehicle without a license. The drug charge was subsequently reduced to simple possession of cocaine and the charge of receipt of stolen property was dismissed for want of prosecution. On November 18, 1987, the Roxbury District Court continued the remaining two charges (possession of cocaine and operating a motor vehicle without a license) "without a finding" until November 18, 1988. During that one year continuance period, defendant Brown was placed under the supervision of the probation office, and explicitly agreed, in writing, to "[o]bey all local, state and federal criminal laws." These charges were ultimately dismissed at the request of the probation office on July 21, 1989. Govt.Ex. 21.

On April 12, 1988, during the continuance period, Brown was again arrested for possession of cocaine with intent to distribute, and was also charged with possession of a sawed-off shotgun, possession of a shotgun and ammunition without a firearm identification card, and receipt of stolen property. The amount of cocaine involved in this arrest is not in evidence. On June 12, 1989, the charge of receiving stolen property was dismissed, but Brown was convicted of the other three offenses and sentenced to one year in the House of Correction. That sentence was suspended for a period of two years. *Id.*

No presumption of dangerousness arises from these circumstances because Brown's convictions for possession of a sawed-off shotgun and for possession of a firearm and ammunition without a firearm identification card are not "crimes of violence" as that phrase is defined in section 3156(a)(4). First, with respect to the latter offense, a first conviction for possession of a firearm

and of ammunition without a firearm identification card is not a felony in Massachusetts. Mass.Gen.L. ch. 269, § 10(h); 18 U.S.C. § 3156(a)(3). Second, none of the crimes of which Brown has been convicted has "as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A). Third, although possession of a shotgun is a felony, this offense, unlike the offense of possession of a firearm *by a felon*, does not, "by its nature, involve[ ] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B). The statutory classification distinguishes between possession by a felon and possession by a nonfelon. The apparent basis for that statutory distinction is that, unlike a felon, a nonfelon is less likely to know that such possession of a firearm is illegal and is thus less likely to be manifesting such disregard for law that he is likely to commit another crime. Accordingly, this offense is not, by its nature, a crime of violence. Indeed, if possession of a firearm by a nonfelon were categorized as a crime of violence, an otherwise innocent technical violation of gun licensing laws might expose the offender to a preventive detention hearing and to detention, at least until the hearing is held. 18 U.S.C. § 3142(f).

■ Also, as a separate reason for holding that there is no presumption of dangerousness in this case, I conclude that the offenses of which Brown was convicted in June 1989 were not committed while Brown was "on release pending trial for a Federal, State, or local offense." Rather, they were committed during the period of a "continuance without a finding" on the previous possession of cocaine charge.

Under the practice known as "continuance without a finding," a District Court judge continues a case for a lengthy period of time without making a finding of guilty. The judge may impose certain conditions on the defendant. At the end of the designated period, if the defendant has complied with the conditions of the continuance, the case is dismissed.

*Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334, 338 (1982). Thus, this period, during which Brown was required to report to the probation office, and which has no counterpart in the federal system, is more analogous to being on probation than to being on release pending trial.

For the foregoing reasons, I conclude that no presumption of dangerousness attaches in this case.

I must next determine whether the evidence nevertheless supports a finding by clear and convincing evidence that there are no conditions of release that would reasonably assure the safety of the community.

■ In contrast with the extent to which Congress has legislated about the meaning of the phrase "crime of violence," Congress has not provided a definition of "safety of ... the community," 18 U.S.C. § 3142(e), or "danger to ... the community," 18 U.S.C. § 3142(g)(4). Congress did, however, choose to use the term "danger," which by its nature is a risk concept. By using this term, Congress did not declare that the community is entitled to assurances of freedom from all harm, and a court cannot detain arrestees on the mere apprehension of danger of harm. Rather, the court's inquiry must focus on whether by conditions of release the community can *reasonably* be assured of its safety. *See United States v. Orta,* 760 F.2d 887, 892 (8th Cir.1985) (en banc) (court "cannot require more than an objectively reasonable assurance of community safety"). Indeed, if the statute were interpreted as requiring a guarantee against any harm, pretrial preventive detention would become the norm rather than the exception because such guarantees could be made in almost no cases. As already noted, preventive detention as a norm is not the manifested congressional intent, S.Rep. No. 225, 98th Cong., 2d Sess. 12, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3195 ("[i]t is anticipated that [pretrial] release will continue to be appropriate for the majority of Federal defendants"), nor is it consistent

with the Supreme Court's opinion in *Salerno*, 481 U.S. at 755, 107 S.Ct. at 2105.

Moreover, the court may not lawfully detain arrestees, who are presumed innocent, unless the nature of the potential harm rises to a certain level of seriousness. Defining that level is difficult, but Congress has provided some guidance by creating a presumption of dangerousness, which arises in the context of a motion to revoke pretrial release, "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony." 18 U.S.C. § 3148(b). This section suggests, then, that Congress was especially concerned with preventing the defendant from committing felonies—serious crimes punishable by more than one year in prison—while on pretrial release. *See also* S.Rep. No. 225, 98th Cong., 2d Sess. 12, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3195 ("the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community").

■ Reading "safety of the community" as "safety from the defendant's commission of serious crimes" is consistent with a broader reading of the Bail Reform Act of 1984, as amended, and of Congress' manifested intention therein. The Act's exercise of regulatory power—imprisoning before trial those defendants who, although presumed innocent, pose a substantial risk of harm to the community—can be harmonized with substantive due process only if the governmental interest is compelling. The risk of harm must thus be substantial—both in terms of the probability of its occurrence and the nature of the threatened harm. The risk of harm must be such that it outweighs the defendant's interest in being free until proved guilty.

■ Finally, it bears emphasis that the nature of the threatened harm to the community must be causally linked to the defendant's release and to the defendant's threatened behavior. That is, the issue that must be addressed is whether the defendant's *release* would pose a danger to the community that would not exist if the

defendant were held in pretrial preventive detention. Also, the court must focus on whether the *defendant*, if released, will commit serious crimes that would not otherwise occur. The court cannot constitutionally detain the defendant if the risk of harm to the community arises only from potential harm perpetrated by others, even if in some sense or to some extent in response to the defendant's release. I thus conclude that the court must consider the substantiality of the *marginal* loss of safety created by the release of this defendant because of the defendant's potential criminal conduct, rather than the substantiality of the *absolute* level of threatened harm posed by the combination of this person's release plus all other dangerous circumstances already existing independently of his release.

With the foregoing conclusions of law in mind, I now turn to the critical question: are there any conditions of release that will reasonably assure the safety of the community?

Congress has made answering this question easier by specifying four factors particularly relevant, although, of course, not the only factors relevant, to the determination of dangerousness:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an

offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).

With respect to the first factor, I note that the charges against Brown do not "involve[ ]" any narcotic drugs. Also, although the charges against him "involve[ ] ... a crime of violence" because of the substantial *risk* that physical harm may occur during the possession, there is no evidence to suggest that Brown has ever been personally implicated in any *act* of violence. Moreover, any risk of harm inherent in the possession of the firearm is dissipated because the firearm that Brown allegedly possessed is no longer within his control.

With respect to the second factor, the evidence against Brown appears strong. The evidence is as follows: While investigating a report that shots were fired and that a car fled from the scene, police officers located the car and established surveillance. Shortly thereafter, the defendant approached the car, was stopped by the officers, and then fled on foot. During the ensuing chase, police officers saw the defendant remove a firearm from his waist and discard it. The defendant was subsequently apprehended, and the firearm retrieved. The gun was an M-11 9-millimeter semi-automatic Cobray pistol, allegedly one of the firearms transported from Georgia to Massachusetts through the conspiracy. Govt.Ex. 22; trans. (Dec. 18, 1989) at 66–67.

The third factor contains two parts. Subsection (A) of the third factor is concerned with whether any conditions of release can be fashioned that would reasonably assure the defendant's appearance. As I determined in Part IV(B), *supra*, there are such conditions of release that would reasonably assure his appearance.

Subsection (B) of the third factor is concerned with whether the defendant committed the instant offense while on release

pending trial or on probation for some other offense.

As noted above, Brown does have a history of criminality while on release—he has not committed crimes while on pretrial release (which would have been sufficient to give rise to a presumption of dangerousness), but he has committed crimes while released on probation. With respect to the instant charge, Brown was arrested for possession of a firearm on August 29, 1989, less than three months after his June 1989 convictions and during the time when he was on probation for those convictions. Moreover, although the statute only requires the court to consider the most recent charge, it is also relevant that Brown had violated conditions of probation before—the April 1988 drug and firearm offenses (for which he was convicted in June 1989) occurred during the period when Brown was released pursuant to the "continuance without a finding" on the August 1987 drug charges.

These past violations of conditions of probation are relevant to the determination of whether Brown could reasonably be expected to abide by conditions of release, but, as noted above, they are not sufficiently serious to give rise to a presumption of dangerousness. Thus, although Brown's history of recidivism is relevant, without more it is insufficient to support either a presumption of dangerousness or a finding of dangerousness by clear and convincing evidence.

Moreover, the probative weight of these past violations is somewhat reduced because they were violations of conditions of *probation*, not conditions of *pretrial release*. Despite Brown's history of violating conditions of *probation*, the record does not in my view support a finding by clear and convincing evidence that he is likely to violate conditions of *pretrial release*.

A defendant released pending trial faces a more powerful incentive to abide by the law and not to violate conditions imposed by the court when they are conditions of pretrial release than when they are conditions of probation. First, a violation of conditions of pretrial release will likely re-

sult in immediate detention, for such a violation is highly probative of an individual's likelihood of harming the community pending trial. *Cf.* 18 U.S.C. § 3148(b) (rebuttable presumption of dangerousness arises if probable cause to believe defendant committed a felony while on release). Such immediate detention would almost surely follow where the decision to release the defendant in the first instance was a close one. In such a case, a violation of conditions of pretrial release would be ample to constitute clear and convincing evidence that the individual's release poses danger.

Moreover, a defendant has a strong incentive to abide by conditions of pretrial release because any violation of those conditions is likely to prejudice his case, both at trial and, if convicted, at sentencing, with respect to the pending charges. *See United States v. Gray,* 651 F.Supp. 432, 438–39 (W.D.Ark.1987), *aff'd,* 855 F.2d 858 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988). Also, should defendant be convicted of committing an offense while on pretrial release, he would be exposed to the possibility of an additional consecutive sentence of imprisonment of up to ten years. 18 U.S.C. § 3147.

The fourth factor of section 3142(g) directs the court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." On the one hand, the evidence before the court would not support a finding by clear and convincing evidence that this defendant has committed an act of violence against the person or property of another. On the other hand, this defendant has previously been convicted of possession of a firearm, and has continued his illegal activities while on probation.

The government contends that the risk of harm to the community is serious because this defendant is a member of a street gang, and because, as alleged in Count One of the indictment, the weapons at issue in this case were brought into Massachusetts to arm the defendants' gang against the Intervale Street gang. As noted above, however, the issue is whether "[this] person's *release*" would pose danger, 18 U.S.C. § 3142(g)(4)—that is, whether releasing Brown will pose a danger that would not exist if he were held in pretrial preventive detention. Under the congressional mandate, a finding of dangerousness cannot rest on evidence pertaining to other defendants or types or groups of defendants, or on evidence of a risk of harm that will exist in the community, in any event, even if this person is still in custody.

The government's argument is thus unpersuasive. There is insufficient evidence before the court to substantiate by clear and convincing evidence the allegations with respect to Brown's participation in the gang or the conspiracy, or even with respect to the existence of any gang vendetta directly involving Brown. Although there is evidence before the court that the weapon that the defendant possessed was one of those imported into Massachusetts through the conspiracy charged in Count One of the indictment, this evidence does not support a finding by clear and convincing evidence that the defendant is likely to participate, or use these weapons, in gang violence if released pending trial. Nor is there clear and convincing evidence before the court that this defendant's release, separate and apart from the release of the other four defendants, would provide some special catalyst for gang violence that would not otherwise exist.

Whether defendant Brown poses a danger to the community presents a very close issue. Weighing all of the factors discussed above, I cannot find in the record before me clear and convincing evidence that Brown's release would endanger the community. Also, under the constraints of carefully drafted and vigorously enforced conditions of release, the risk that might otherwise exist can be reduced.

For the foregoing reasons, I will allow defendant Brown's motion to revoke the Magistrate's Order of pretrial detention.

Before revoking the Magistrate's Order of pretrial detention, however, I must determine the appropriate form of the order that will replace it—that is, I must set bail

and conditions of pretrial release for defendant Brown. A hearing to determine bail and conditions of pretrial release will be held forthwith.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) The government's motion to revoke the Magistrate's Order of pretrial release for defendants Phillips, K. Smith, Williams and Davis is DENIED.

(2) Defendant Brown's motion to revoke the Magistrate's Order of pretrial detention will be ALLOWED once the court determines appropriate bail and conditions of release. A hearing on these matters will be held forthwith.

