UNITED STATES of America,

v.

**Bin Van SAY, Defendant,**

**No. CRIM.A.02–M–1740–CBS.**

United States District Court,
D. Massachusetts.

Dec. 5, 2002.

W. Theodore Harris, Jr., Ted Harris and Associates, P.C., Roger Witkin, Daniel J. Cloherty, Federal Defender's Office, James S. Dilday, Grayer & Dilday, Boston, MA, for Defendants.

### *MEMORANDUM OF PROBABLE CAUSE AND DECISION ON THE GOVERNMENT'S MOTION FOR DETENTION*

SWARTWOOD, United States Magistrate Judge.

#### I. *Nature of the Offense and the Government's Motion*

On November 25, 2002, a Criminal Complaint was filed, charging Bin Van Say ("Mr.Say"), and others, with conspiracy to possess stolen firearms, in violation of 18 U.S.C. §§ 371 and 922(j) and possession of stolen firearms, in violation of 18 U.S.C. § 922(j).

At Mr. Say's initial appearance on November 25, 2002, he was advised of his right to a preliminary examination in accordance with Fed.R.Crim.P. 5.1 and the Government moved for a detention hearing pursuant to 18 U.S.C. §§ 3142(f)(1)(A)(Mr. Say has committed a crime of violence) and (f)(2)(A) (Mr. Say poses a risk of flight).

On December 2, 2002, a consolidated probable cause detention hearing was held. Michael P. Curren, Special Agent with the Bureau of Alcohol, Tobacco and Firearms (?ATF?) of the United States Department of Treasury, testified on behalf of the Government and was cross-examined by Mr. Say's counsel. Additionally, Mr. Say's father, Trung Tran, testified on behalf of his son and was cross-examined by counsel for the Government.

#### II. *Findings of Fact*

1. On October 6, 2002, Donald M. Ryan, 35 Robert Boulevard, Charlton, Massachusetts, reported to the Charlton Police Department that sometime prior to October 6, 2002, fifteen firearms were stolen from his residence. *Govt. Ex. 1.* Three of the firearms were pellet guns and do not qualify as firearms under federal law. Several of the stolen firearms were manufactured outside of Massachusetts.

2. Mr. Say was identified as a participant in the firearms robbery at the Ryan residence. On November 23, 2002, ATF Special Agent, Michael P. Curren, went to Mr. Say's apartment and questioned him concerning his involvement in the Ryan robbery. Mr. Say signed a waiver of his right to remain silent and his right to advice of counsel. *Ex. 3.* Mr. Say then gave ATF Agent Curren a seven page written statement (*Govt.Ex. 2* ) in which he admitted his participation in the Ryan robbery.

3. According to Mr. Say, he was approached by co-Defendant, Herminio M. Cruz (?Mr.Cruz?), with whom Mr. Say worked at the Atriam Restaurant, as to whether Mr. Say would be willing to assist Mr. Cruz and others in stealing firearms from the Ryan residence. The purpose for stealing these firearms was to sell them to a Worcester Street gang known as the Vice Lords and also sell some of the firearms to buyers on the west coast. Mr. Say accompanied Mr. Cruz and several other individuals to the Ryan residence where Mr. Cruz and two other individuals went into the Ryan house to steal the firearms. Mr. Say acted as a look-out and when he saw a car approaching, went to the Ryan residence to warn those inside that they should leave. *Govt. Ex. 2.*

4. After the robbery, the stolen firearms were kept for a period of time in an

apartment that Mr. Say shared with a co-Defendant, Alberto Rodriguez.

### III. *Probable Cause*

Mr. Say is charged with conspiracy to possess and possession of stolen firearms, in violation of 18 U.S.C. §§ 371 and 922(j). Under this latter statute, it is unlawful for any person to possess stolen firearms. Mr. Say has admitted that he went with a group of individuals to the Ryan residence, assisted in stealing firearms and following the robbery, stored those firearms, for a period of time, in an apartment that he shared with Mr. Rodriguez. Therefore, I find probable cause for the offenses charged against Mr. Say in this Criminal Complaint.

### IV. *Discussion of Whether Detention is Warranted*

#### A. *Discussion of the Bail Reform Act*

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or ("the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c) ] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in *United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755, 107 S.Ct. at 2105. For this reason, the Defendant

may be detained only if the judicial officer finds by (1) *clear and convincing evidence,* that the Defendant is a danger to the community, or (2) *a preponderance of the evidence,* that the Defendant poses a risk of flight. *See* 18 U.S.C. § 3142(f); *United States v. Jackson*, 823 F.2d 4–5 (2d Cir. 1987); *United States v. Berrios–Berrios,* 791 F.2d 246, 250 (2d Cir.(1986), *cert. denied,* 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). *See also United States v. Patriarca,* 948 F.2d 789, 792–93 (1st Cir.1991). Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142(c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. *See* 18 U.S.C. § 3142(f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community," the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

 1. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

 2. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### B. *Defendant's History and Characteristics*

Mr. Say was born on August 26, 1983, in Worcester, Massachusetts, where he has resided all of his life.

Mr. Say's mother and father reside in Worcester with his two siblings, ages 13 and 17. Mr. Say maintains regular contact with his parents and siblings and with several aunts and uncles in the Worcester area.

At the time Mr. Say was arrested, he shared a fourth floor apartment with Mr. Rodriguez and his girlfriend at 16 Portland Street, Worcester, Massachusetts. Prior to moving to that apartment, Mr. Say and Mr. Rodriguez occupied an apartment on the second floor at that same address for about two or three months. Prior to living with Mr. Rodriguez, Mr. Say resided with his parents for two or three months and prior to that with a girlfriend at 102 Hamilton Street, Worcester, Massachusetts for about two months. Prior to that, Mr. Say resided with his parents since birth.

Mr. Say has no record of criminal convictions, but there is a pending criminal case against Mr. Say in the Worcester District Court for identification violation, credit card misuse and larceny of more than $100. *Govt. Ex. 5.* These offenses are as a result of Mr. Say improperly charging credit card purchases in excess of $25,000 to his father and Huy Tran, a family friend, who had been traveling in Vietnam at the time the alleged misuse occurred. *Govt. Ex. 6.*

Mr. Say is also the subject of an abuse prevention order obtained by his former girlfriend. In an affidavit in support of that order, Mr. Say's former girlfriend stated that Mr. Say threatened to kill her, that he was involved in drug dealing and that he was going to kill someone else. *Govt. Ex. 7.* However, Mr. Say was never served with a copy of this Order.

### C. *Nature of the Offense; Weight of the Evidence; Nature and Seriousness of Danger Posed By Mr. Say's Release and Risk of Flight*

#### 1. *Nature of the Offense*

Mr. Say is charged with an offense for which he could receive a maximum sentence of ten years.

#### 2. *Weight of the Evidence*

I have previously found probable cause for the offenses charged against Mr. Say in this Criminal Complaint. I made that finding based primarily on Mr. Say's admissions as to his involvement in the offenses charged in this Complaint. Therefore, the weight of the evidence against Mr. Say is substantial.

### 3. Whether Mr. Say Poses A Danger To The Community

█ The Government contends first, that Mr. Say has committed a crime of violence (conspiracy to possess and possession of stolen firearms) and therefore, should be detained on the grounds that he poses a danger to the community and second, that if the Court were to find that violation of 18 U.S.C. §§ 371 and 922(j) is not a crime of violence, then Mr. Say should be detained on dangerousness grounds because he and his co-conspirators planned to sell the stolen firearms to a Worcester Street gang known as the Vice Lords and people on the west coast and that he threatened to kill his girlfriend and another person. Therefore, I must first determine whether the offenses charged in this Complaint are crimes of violence.

Judge Keeton concluded in *United States v. Phillips*, 732 F.Supp. 255 (D.Mass.1990), that "an offense is a 'crime of violence' only if the risk of violence is inherent in the *nature* of the crime, regardless of whether there was a risk of violence, or any actual violence, during the commission of the offense under the facts of the particular case." *Id.*, at 261 (emphasis in original). Applying this reasoning, Judge Keeton concluded that the offense of being a felon in possession of a firearm is, by its nature, a crime of violence, while the offenses of conspiracy and unlawful interstate transportation and receipt of firearms are not, by their nature, crimes of violence. In reaching this conclusion, Judge Keeton determined that the offense of being a felon in possession involves a substantial risk that the offender will use physical force against property or another because "[a] felon is more likely to know that such possession is illegal and is more likely to be possessing a firearm with willful disregard for the legal obligations imposed upon him as a convicted felon. This also makes it more likely that he will commit another crime, and that he will do so with a firearm in his possession. Also, possession of a firearm is on ongoing offense, and may lead to use of the firearm." *Id.*, at 262, 263. The Second Circuit, in *United States v. Dillard*, 214 F.3d 88 (2d Cir.2000), applying reasoning similar to that of Judge Keeton, also concluded that the offense of being a felon in possession is a crime of violence for purposes of the bail reform act. *Id.*, at 94 (risk of violence by person charged with possessing firearm after having previously been convicted of committing felony is substantial).

I agree with Judge Keeton and the *Dillard Court* and have previously concluded in several cases that being a felon in possession of a firearm is a crime of violence, while interstate transportation of firearms is not a crime of violence. In this case, Mr. Say, who is not a convicted felon, is charged with conspiracy to possess and possession of stolen firearms. The question now becomes whether under the reasoning adopted by Judge Keeton and the *Dillard Court*, simple possession and/or conspiracy to possess a stolen firearm are crimes of violence for purposes of the bail reform act, that is, whether the there is a substantial risk of violence inherent in the very nature of the crimes themselves.

In concluding that the offense of being a felon in possession of a firearm is a crime of violence for purposes of the bail reform act, both Judge Keeton and the *Dillard Court* relied heavily on the fact that a convicted felon in possession of an illegal firearm, by virtue of having previously committed a serious crime(s)[1], is more

1. The *Dillard Court* pointed out that the definitions governing the felon in possession statute specifically excludes felony convictions for offenses related to business practices which are not inherently violent.

likely, i) to commit other offenses, and ii) use such firearm during the commission of other offenses. Therefore, the nature of the offense involves a *substantial* risk of physical harm to another or property. Recently in the case of *United States v. Fernandez,* 144 F.Supp.2d. 115, 122 (N.D.N.Y. 2001), the court concluded that a violation of 18 U.S.C. § 922(j)(receipt of stolen firearms) did not qualify as a crime of violence because there did not exist "any substantial likelihood that the risk of physical force, ... would occur in the course of committing the offense." *Id.* at 122. I find that the same reasoning applies in this case, *i.e.,* while there may be some risk that a person in possession of a firearm might use that firearm to commit an offense, where that person has no prior felony convictions, that risk cannot be deemed substantial. Therefore, simple possession and conspiracy to possess a firearm are not crimes of violence for purposes of the bail reform act, 18 U.S.C. §§ 3142(f)(1)(A) and 3156(a)(4). I find further support for this conclusion in *United States v. Carter,* 996 F.Supp. 260 (W.D.N.Y.1998)(crimes of unlicensed dealing or importation of firearms across state lines do not by their nature involve substantial risk of use of physical force and therefore are not crimes of violence). The Government's second argument for detention is that I have discretion under 3142(f) to detain Mr. Say as a preventive measure in order to protect the public from a perceived risk that Mr. Say will cause harm to his former girlfriend or another individual. I disagree. In *United States v. Ploof,* 851 F.2d 7 (1st Cir.1988), the First Circuit stated:

> We believe, however, the structure of the [bail reform] statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists. To conclude otherwise would be to ig-

nore the statement and the legislative history that the "circumstances for invoking a detention hearing in effect served to limit the types of cases in which detention may be ordered prior to trial, and to authorize detention in a broad range of circumstances that we do not believe Congress envisioned."

*Id.,* at 11 (internal citation to quoted authority omitted). The First Circuit further stated that "detention ... based on dangerousness grounds, ... can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)." *Id.* Since in this case, I have found that the offense charged against Mr. Say is not a crime of violence, I cannot detain him solely on the grounds that there is a likelihood that Mr. Say may cause harm to another person. Therefore, detention on the grounds of dangerousness is not warranted.

### 5. *Whether Mr. Say Poses A Risk of Flight*

 Mr. Say's parents, brother, sister, aunts and uncle all live in Worcester County. Mr. Say does have relatives living in Vietnam but he has never been to Vietnam and by ordering him to surrender his passport, he cannot get to Vietnam. Because of Mr. Say's substantial ties to Worcester, I cannot find by a preponderance of the evidence that he poses a risk of flight. Additionally, I have required Mr. Say's father to act as third-party custodian and have imposed a curfew, which I believe are sufficient conditions to insure that Mr. Say does not flee or fail to appear as required by this Court. Therefore, detention on the grounds that Mr. Say poses a risk of flight is not warranted.

### V. *Conclusion*

I find that probable cause exists for the charges against Mr. Say. The Govern-

ment's motion for detention is *denied* and Mr. Say has been released on conditions.