**UNITED STATES of America**

v.

**Charles POWELL.**

**No. 92–108–J.**

United States District Court, D. Massachusetts.

Nov. 25, 1992.

Asst. U.S. Atty. Ralph Boyd, for U.S.

Norman Zalkind, Zalkind Rodriguez Lunt & Duncan, Boston, MA, for Powell.

## ORDER ON DETENTION

ALEXANDER, United States Magistrate Judge.

The defendant was arrested on November 3, 1992, pursuant to a warrant issued subsequent to a complaint charging that he violated 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). That day, the defendant had his initial appearance before this Court. Assistant United States Attorney Ralph Boyd represented the government. The government stated the charges and noted that the defendant faces a maximum penalty of ten years of incarceration, a $250,000 fine and a $50 special assessment, but that he would also be eligible for enhancement as a career criminal to a maximum term of lifetime incarceration. The government moved to detain the defendant pursuant to 18 U.S.C. § 3142(e), requesting a hearing pursuant to § 3142(f)(1)(A) (crime of violence), § 3142(f)(1)(D) (recidivist offender), § 3142(f)(2)(A) (risk of flight) and § 3142(f)(2)(B) (danger of obstruction of justice).[1] This Court appointed counsel for the defendant, and the government moved for a continuance, which this Court granted.

This Court reconvened on November 6, 1992, to conduct a detention and probable cause hearing. The defendant was represented by Attorney Norman Zalkind. Assistant United States Attorney Ralph Boyd again represented the government.

The government called as its only witness Special Agent Daniel E. Campbell of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), who had written the affidavit accompanying the complaint. The substance of his credible testimony is as follows.

On October 7, 1992, at approximately 2:35 p.m., Boston Police officers for Area B responded to reports of gunshots being fired in the area of Humbolt Avenue, in Roxbury. Officers discovered three victims who had been shot in the area of 197 to 207 Humbolt Avenue. They found Stanley Owens, lying down in front of 207 Humbolt Avenue, with gunshot wounds to the chest, arm and leg. The wounds, which proved fatal, were incurred from shells discharged by a .44 caliber firearm. The other victims were Victoria Williams and Judith Day. The former had incurred a gunshot wound to the right foot; the latter had incurred a gunshot wound to the right leg.

Approximately one half hour later, police officers received information that a man of the defendant's description was traveling on Homestead Street near the scene of this crime. The defendant was apprehended in the rear of 111 Homestead Street, near the corner of Humbolt Avenue and Homestead Street. This location was approximately one block from the scene of the shooting. Powell appeared to match a description given by eye witnesses of one of the perpetrators of the shooting. He had suffered a gunshot wound to the left leg and was holding a .44 caliber Charter Arms revolver. Police officers also recovered two discharged .44 caliber casings at the shooting scene.

A police ballistics test compared a bullet fired from the firearm with one taken from the chest of Stanley Owens. The test revealed the two bullets to have been fired from the same firearm—the one recovered from the defendant. Agent Campbell spoke to ATF Agent Al Offringa, who determined that the firearm had travelled in interstate commerce. Agent Campbell conducted a record check. This search revealed that the defendant was convicted in 1986 of conspiracy to distribute cocaine and heroin, a crime punishable by a term of imprisonment exceeding one year. Upon booking and fingerprinting, the defendant gave his name as Charles Powell, with the date of birth of September 18, 1961. Records revealed that, upon the arrest leading to the 1986 conviction of Charles Powell,

---

1. For reasons explained *infra,* the crime of being a felon in possession is not a crime of violence as that term has been construed by the First Circuit, and the government's motion under § 3142(f)(1)(A) is, thus, improper. At the detention hearing, the government represented that it no longer sought detention under § 3142(f)(1)(D). Furthermore, it presented no argument as to § 3142(f)(2)(B).

the defendant in the 1986 case had used the alias of John Williams.

Police officers conducted a search pursuant to a search warrant, of an apartment believed to be that of the defendant. Officers observed the names C. Powell and A. Bodkins on the apartment. The apartment contained two bedrooms. The search revealed a .9mm Taurus semi-automatic pistol bearing an obliterated serial number, a .38 caliber derringer, a magazine (clip) containing .9mm ammunition, fourteen .38 caliber rounds of ammunition and personal papers, photographs and clothing belonging to the defendant. Both weapons were loaded. The derringer was located in the bedroom of an infant.

On cross-examination, Agent Campbell testified that a murder charge against the defendant for the shooting of Stanley Owens was dismissed without prejudice from the Roxbury District Court. He also noted that the weapons are currently undergoing fingerprint analysis and that no results have been received.

The defendant made a proffer to the effect that the defendant was not trying to shoot anyone and that, if he had shot anyone, it was in self defense.

 Based on the credible testimony and affidavit of Agent Campbell, this Court finds probable cause to believe that the defendant committed the crime as charged. This Court turns next to the issue of detention. Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e). This determination is predicated upon the government's "showing of dangerousness or risk of flight." *United States v. Montalvo–Murillo*, 495 U.S. 711, 717, 110 S.Ct. 2072, 2077, 109 L.Ed.2d 720 (1990). Because of the interference of pretrial detention with the "importan[t] and fundamental ... right" of liberty, *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987), despite the presumption

of innocence pending trial, *id.*, 481 U.S. at 762–63, 107 S.Ct. at 2109–10 (Marshall, J., dissenting) (quoting 18 U.S.C. § 3142(j)), this Court will not make such a finding lightly.

As the First Circuit has noted, the Bail Reform Act of 1984's authorization of detention on grounds of dangerousness "represented a watershed in the criminal law." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir.1990). In upholding the constitutionality of pretrial detention on grounds of dangerousness, the Supreme Court emphasized that the Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious crimes." *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101 (citing 18 U.S.C. § 3142(f)). The First Circuit has elaborated on this circumscription, by noting that "release can be denied on dangerousness grounds alone only when a person is charged with one of the crimes enumerated in 18 U.S.C. § 3142(f)(1)(A) through (D)." *United States v. Ploof*, 851 F.2d 7, 9 (1st Cir.1988) (holding that danger of defendant obstructing unrelated court proceedings and plotting to kill persons unrelated to instant court proceeding are not grounds for pretrial detention); *see also United States v. Martorano*, No. 92–26–J, Order on Detention, 1992 WL 73558, *2 (D.Mass. March 23, 1992). The other grounds for detaining, expressed in § 3142(f)(2)(A) and (B), address the risk of flight and the risk of obstruction of justice.

In this case, the government moved at the bail hearing for a detention hearing pursuant to § 3142(f)(1)(A), (f)(1)(D), (f)(2)(A) and (f)(2)(B). At the detention hearing, the government withdrew its motion under (f)(1)(D) and declined to present evidence under (f)(2)(B). That leaves this Court to consider risk of flight, pursuant to (f)(2)(A), and danger to the community, insofar as the motion for a detention hearing pursuant to (f)(1)(A) was proper.

 Section 3142(f)(1)(A) authorizes holding a detention hearing if the defendant is charged with a crime of violence. To qualify as a crime of violence, a crime must be either (1) a crime involving the use

or attempted use of force against the person or property of another; or (2) a felony posing a substantial risk that physical force would be used against the person or property of another. 18 U.S.C. § 3156(a)(4). This Court has noted that "there exists ... a stringent, albeit widely ignored, body of law in this Circuit on what constitutes a crime of violence." *Martorano*, 1992 WL 73558, at *2. Specifically, this Court has ruled that the felon in possession crime does not constitute a crime of violence. *United States v. Whitford*, No. 92–73–J, Order on Detention, 1992 WL 188815 (D.Mass. July 27, 1992). The government asks this Court to revisit the issue.

The government's argument is largely based on Judge Keeton's ruling that the felon in possession crime is a crime of violence. *United States v. Phillips*, 732 F.Supp. 255, 262–63 (D.Mass.1990). In *Whitford*, this Court provided the following analysis:

> The holding of [*Phillips* ] ... is cast in doubt by a tandem of recent decisions by the First Circuit. In *United States v. Doe*, 960 F.2d 221 (1st Cir.1992), the First Circuit held that being a felon in possession is not a "violent felony" for purposes of the federal sentencing guidelines. While this case did not involve the Bail Reform Act, in rejecting arguments that being a felon in possession is a violent felony, the court cited *Phillips* as exemplary of a line of reasoning it was choosing not to follow. *Id.* at 225 (citing, *inter alia, Phillips*, 732 F.Supp. at 262–63). More recently, in *United States v. Bell*, 966 F.2d 703 ... (1st Cir. ... 1992), the First Circuit extended this rationale, holding that being a felon in possession is not a crime of violence for purposes of the sentencing guidelines.
>
> This rationale should extend further to cover the Bail Reform Act for two reasons. First, the definitions of the term "crime of violence" are substantially the same under the Bail Reform Act and the sentencing guidelines. *Compare* 18 U.S.C. § 3156(a)(4) *with* U.S.S.G. § 4B1.2. Second, in construing this definition under the guidelines, the First Cir-

cuit stressed the Sentencing Commission's preference for a categorical approach to determining which types of offenses are crimes of violence and noted that many instances of the felon in possession crime do not pose a substantial risk of physical injury to another. *Bell*, 966 F.2d at 704–06 .... One aspect of *Phillips* that unquestionably remains good law is Judge Keeton's determination that such a categorical approach is similarly the cynosure for determining which types of offenses constitute crimes of violence under the Bail Reform Act. *See Phillips*, 732 F.Supp. at 261 (citing *United States v. Johnson*, 704 F.Supp. 1398, 1400 (E.D.Mich.1988)). Thus, this Court concludes that, under the First Circuit precedents, the crime of being a felon in possession of a firearm is not a crime of violence under the Bail Reform Act. The government offers nothing to persuade this Court otherwise.

*Whitford*, 1992 WL 188815, at *3—*4.

The government refers this Court to a detention order of Magistrate Judge Cohen's, which reaches a different result. *United States v. Sealey*, No. 91–1303B–01, Memorandum and Order on Government's Motion for Detention (D.Mass. Sept. 24, 1992). *Sealey* concludes that *Phillips* is good law, relying on three grounds: (1) the strength of the rationale underlying *United States v. Jones*, 651 F.Supp. 1309, 1310 (E.D.Mich.1987) and *United States v. Johnson*, 704 F.Supp. 1398 (E.D.Mich.1988), both of which found the felon in possession crime to be a crime of violence; (2) the fact that *Doe* 's reasoning was based in part on interpretations of the United States Sentencing Commission, in the absence of direct evidence of congressional intent; and (3) the individualized nature of detention determinations. *Sealey*, 91–1303B–01, at 3 n. 2.

Presented to this Court after *Whitford*, these arguments exhume the horse for further flogging. As noted, the Court in *Doe* did cite *Phillips*, in the line of cases it chose not to follow. Also cited in that line was *Jones* and *United States v. Stinson*, which was predicated upon *Jones*. 943

F.2d 1268, 1271–72, *reh'g denied*, 957 F.2d 813 (11th Cir.1992), *cert. granted in part*, — U.S. ——, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992). If *Doe* could be seen as rejecting the rationale of these cases solely in the context of sentencing, the government would have a point.

*Doe*, however, while relying on interpretations of the Sentencing Commission, also based its analysis on broader principles of interpretation. The court noted that, for many instances in which the felon in possession crime may occur, such as possession of a firearm in a closet, it is difficult to imagine a serious risk of physical harm. *Doe*, 960 F.2d at 224. The court also noted that, by construing the definition of violent felony to cover the felon in possession crime, the violent felony definition would be triggered by any direct future harm of present conduct, necessitating inclusion of offenses such as drunken driving. *Id.* at 225.

In *Bell*, the First Circuit found that being a felon in possession is not a crime of violence for purposes of sentence enhancement. 966 F.2d at 707. The Court relied on the similarity of the language defining crime of violence for sentencing with the language defining violent felony for sentencing and relied on the categorical approach taken in *Doe—i.e.*, either all forms of the felon in possession crime are crimes of violence or none are. *Id.* at 704–07.

The term violent felony is defined as a felony that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(e)(2)(B). The term crime of violence is defined by the Sentencing Guidelines as a felony that:

(i) has as an element the use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). The Bail Reform Act defines crime of violence as:

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person of another, or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

As noted, *Doe* considered decisions under the crime of violence provision of the Bail Reform Act in making its determination under the violent felony provision. Similarly, other courts that have considered the definition of "crime of violence" for purposes of sentencing have relied upon rulings under the Bail Reform Act and vice versa. *See, e.g., Stinson*, 943 F.2d at 1271–72 (sentencing); *United States v. Spires*, 755 F.Supp. 890, 892 (C.D.Cal.1991) (detention).

The factors underlying *Doe* and *Bell* apply with the same force to the definition of crime of violence under the Bail Reform Act. To hold otherwise would require a finding that the felon in possession crime is not indicative of the type of danger to society that would trigger sentencing provisions designed to prolong incarceration for dangerous individuals, but is indicative of the type of danger to society that would trigger the Bail Reform Act's provisions for incarcerating dangerous individuals before trial, when the relevant language is nearly identical. Why are such individuals more dangerous before trial than after serving their sentence? Arguably, it is the other way around, given, *inter alia*, that a conviction increases the certainty of a person's dangerousness and that a lengthy period of incarceration may harden criminal tendencies.

As the Court in *Bell* noted in response to the government's attempts to distinguish

*Doe,* "adopting the government's view would create a weird asymmetry, leaving courts to apply an inconsistent rule of construction that would allow identical 'felon in possession' cases to be treated in diametrically opposite ways...." 966 F.2d at 705. While the asymmetry would not be as great by reaching a different result for pretrial detention, it would be too much for this Court to countenance in light of the First Circuit's pronouncements.

■ While it is true that a decision as to detention is based on highly individualistic factors, *see* 18 U.S.C. § 3142(g), subsection (g)'s command to consider whether the defendant is charged with a crime of violence cannot be seen as anything other than a categorical factor. Not only have *Doe* and *Bell* followed the categorical approach in defining violent felonies and crimes of violence for purposes of sentencing, but *all* of the decisions relied upon in *Sealey* and by the government in the instant case employ a categorical, generic approach to defining crimes of violence *under the Bail Reform Act,* looking at the nature of the offense, instead of at the circumstances of the particular instance of the commission of the offense. *See Phillips,* 732 F.Supp. at 261; *Johnson,* 704 F.Supp. at 1400; *Jones,* 651 F.Supp. at 1310. This categorical approach is in harmony with the overall legal landscape of detention jurisprudence, which construes the Bail Reform Act narrowly, mindful that its shores abut choppy constitutional waters. *Compare Phillips,* 732 F.Supp. at 260; *with Ploof,* 851 F.2d at 11.

■ Once it is determined that it is the generic nature of the offense that is dispositive, *Doe*'s observation that many instances of commission of the felon in possession offense pose no serious risk of physical harm, 960 F.2d at 224, leads ineluctably to the conclusion that a felon in possession is not a crime of violence for purposes of the Bail Reform Act. The government is correct to point out that many instances of the commission of the felon in possession crime are indicative of extraordinary danger, including the circumstances of the instant case. Those arguments, however, are for the legislative branch to resolve. Thus, the

motion under § 3142(f)(1)(A) for crime of violence is inappropriate, and the government has no ground left to argue the issue of dangerousness.

■ The government's sole remaining ground for detention is § 3142(f)(2)(A)'s provision for risk of flight. To detain on this ground, the government must demonstrate, by a preponderance of the evidence, that no condition or combination of conditions will assure the defendant's appearance. *United States v. DiGiacomo,* 746 F.Supp. 1176, 1180–81 (D.Mass.1990). Whether any set of conditions will assure the defendant's appearance shall be determined in light of the factors enumerated in 18 U.S.C. § 3142(g), the evidence before the Court and the nature of any conditions offered by the defendant. *United States v. Tortora,* 922 F.2d 880, 884 (1st Cir.1990). The factors the Court must consider in § 3142(g) include:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

■ First, the nature of the crime is serious. Being a convicted felon and then

taking possession of a firearm, in violation of the law, displays a tendency towards repetitive criminal conduct. This pattern of conduct, in light of the ten year penalty and potential enhancement, indicates a risk of flight.

Second, this Court turns to the weight of the evidence, which is not insignificant. The credible testimony depicts a strong case against the defendant. The arrest, with the seizure of the gun, and the confirmation that the gun came from out of state make for a strong case.

Third, this Court examines the history and characteristics of the defendant. The defendant has used two aliases. Most of his ties are to New York. The defendant resides with his girlfriend, Arvetta Boykins.[2] The defendant told pretrial services that he has resided with her for five days. The defendant has seven children from five different women. He has been employed as a mechanic at Moses Garage, in Roxbury, for one week. For several years, he was employed by J.B. Auto, in Roxbury. He represents that he becomes intoxicated through alcohol at least four times per week and last used PCP in January of 1992. He states that he received psychiatric treatment at age 16, pursuant to a court order.

The defendant's criminal record is prodigious and includes drug offenses. A warrant remains outstanding for the defendant in Maryland, on 1982 charges of possession of cocaine with intent to distribute, due to his failure to appear in court after release on a $2,000 corporate bond. The defendant asserts that, if the authorities in Maryland still sought to prosecute him on the charge, they would have had ample opportunity to do so following the defendant's sentence from a 1986 conviction in this District. However, the defendant failed to appear and eluded the authorities, possibly for four or more years. A Federal Bureau of Investigations check under the name Roger Harris revealed the aliases Chuck Berry, Charles Powell, Charlie Powell, Charles Slim, C. Powell, Charles E. Powell, John Powell and John Williams. The defendant's record spans Massachusetts, New York, Connecticut and Maryland.

Given the defendant's instability, abuse of alcohol, lack of ties, use of aliases and proclivity to commit drug offenses in different regions of the country, it would seem that, if ever there was a case that fit the statutory paradigm for risk of flight it is this one. The conditions of release offered by the defendant do little to assuage this Court's concerns. The defendant offers the custodianship of his girlfriend, Arvetta Boykins. There is some dispute over how long he has resided with her, the defendant having told pretrial services that the period was only five days and counsel proffering that the time span was much longer. The defendant's seven children from five different women does not indicate that this Court should presume his present ties to Ms. Boykins to be stable. Furthermore, custodianship requires a respect for and adherence to the law, as well as stability and control, the indicia of which appear to be lacking in Ms. Boykins, given the firearms found in her apartment, including the loaded weapon in the bedroom of the infant child. The defendant apparently becomes alcoholically intoxicated four times per week despite his residence with Ms. Boykins, in addition to the alleged criminal conduct at issue. In this environment, this Court does not find that electronic monitoring would provide a meaningful assurance of the defendant's appearance in court, particularly in light of his failure to appear in Maryland and his evasion of the authorities in that state.

This Court finds that the government has met its burden of demonstrating by a preponderance of evidence that no condition or combination of conditions will assure the defendant's appearance. Thus, pretrial detention is ORDERED pursuant to 18 U.S.C. § 3142(e).

Further, pursuant to 18 U.S.C. § 3142(i) it is ORDERED that:

---

**2.** Pretrial services spells the name "Boykins." According to the affidavit of Agent Campbell, the name "A. Bodkins" was on the mailbox with that of "C. Powell" at the defendant's apartment. The defendant's own memorandum in support of release spells her name "Boykin."

1. The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The defendant be afforded reasonable opportunity for private consultation with his counsel; and

3. On Order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Detention Order may be obtained by the defendant's filing of a motion for revocation or amendment of the Order pursuant to 18 U.S.C. § 3145(b).