UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Dale TALBOTT, Defendant–
Appellant.

No. 95–2503.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1996.

Decided March 8, 1996.

Mark D. Stuaan (argued), Office of United States Attorney, Indianapolis, IN, for United States.

Linda M. Wagoner (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Richard Dale Talbott.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

PER CURIAM.

A jury convicted Richard Dale Talbott of being a felon in possession of a firearm and of being a felon in possession of ammunition. 18 U.S.C. § 922(g)(1). The district court sentenced Talbott to 327 months' imprisonment, to be followed by five years of supervised release. He appeals his convictions and sentence. We have jurisdiction under 28 U.S.C. § 1291.

I

In the evening of November 19, 1984, Lori Klingsmith and Milton Ferrell drove to the Bridge Liquors store in New Albany, Indiana. Ferrell entered the store, while Klingsmith waited in the car with her grandson. At about the same time, the defendant and his wife, Trudy Talbott, entered the store. While there, they encountered the defendant's cousin, Clarence Fuller.

Ferrell purchased a case of beer. He left the beer at the check-out counter while he went to pick out a bottle of bourbon. Fuller took the case of beer out of the store and placed it in the Talbotts' car. When Ferrell realized that his beer no longer was at the check-out counter, he exited the store and confronted the defendant. An argument ensued, during which Ferrell removed a knife from his pocket. Upon seeing the knife, Trudy Talbott handed the defendant a rifle from inside their car. The defendant pointed the rifle at Ferrell, who reentered the store and telephoned the police. The defendant thereupon returned the rifle to his wife.

At this point, Fuller approached the Talbotts' car to retrieve the case of beer. A struggle over the rifle developed among the defendant, Fuller, and Trudy Talbott. During the struggle, Fuller was shot in the neck and fell to the ground. The defendant took the rifle from his wife, ejected the spent casing, stood over Fuller, and threatened to kill him if he got up.

Fuller drove himself to the hospital for treatment of his gunshot wound. The defendant and his wife also went to the hospital, where the police arrested Trudy Talbott for attempted murder. The police recovered the loaded rifle and some ammunition from the

Talbotts' car. The defendant told the police that he owned the rifle.

The following Monday, November 21, 1994, the defendant went to the Floyd County Courthouse, where his wife was being charged. Shortly after he arrived there, a detective arrested him for his involvement in the November 19 altercation. Following the arrest, the detective searched the defendant and found 24 rounds of ammunition in his pocket. Because Talbott had been convicted of felony battery in 1991, the federal government charged the defendant with two counts of being a felon in possession (of a weapon and of ammunition), in violation of 18 U.S.C. § 922(g)(1).

## II

■ At trial, the theory of defense was that the defendant justifiably possessed the rifle in order to prevent harm to himself and to his wife, and that he justifiably possessed the ammunition because he carried it to the courthouse to surrender it as evidence. The defendant tendered a self-defense instruction and what he termed a "good faith defense" instruction. The tendered instructions stated that the government had the burden to negate the defenses beyond a reasonable doubt. The district court determined that the defendant had raised both defenses sufficiently[1] and that instructions therefore were appropriate on each. In instructing the jury, however, the court stated that the defendant bore the burden of proving the defenses by a preponderance of the evidence. The defendant argues on appeal that the instructions, by shifting the burden of proof to him, amounted to reversible error. In reviewing jury instructions to which objections properly were raised in the proceedings below, we must determine, from looking at the charge as a whole, "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *United States v. Donovan,* 24 F.3d 908, 916–17 (7th Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994). We conclude that the challenged instructions misled the jury by

impermissibly shifting the burden of proof to Talbott.

■ The United States Constitution requires the government to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Mason v. Gramley,* 9 F.3d 1345, 1349 (7th Cir.1993). A jury instruction that shifts to the defendant the burden of disproving an element of the charged offense is unconstitutional. *United States v. Toney,* 27 F.3d 1245, 1250 (7th Cir.1994), *citing Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977). However, federal and state legislatures may reallocate the burden of proof by labeling elements as affirmative defenses and stating that criminal defendants bear the burden of proving those defenses. *Martin v. Ohio,* 480 U.S. 228, 233, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (1987); *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327; *Eaglin v. Welborn,* 57 F.3d 496, 500–01 (7th Cir.1995) (en banc); *Mason,* 9 F.3d at 1350. The Supreme Court has upheld this shifting of the burden of proof against constitutional challenges, reasoning that the federal Constitution requires that the government bear the burden only as to the elements of the charged crime and that the legislature's definition of the elements of a criminal offense usually is dispositive. *Martin,* 480 U.S. at 232–33, 107 S.Ct. at 1101; *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *Patterson,* 432 U.S. at 201–02, 97 S.Ct. at 2322.

Using this power, Congress has shifted the burden of proving the affirmative defense of insanity. *See* 18 U.S.C. § 17(b) ("[t]he defendant has the burden of proving the defense of insanity by clear and convincing evidence"). Similarly, 18 U.S.C. § 2320(c) states that "[i]n a prosecution [for trafficking in counterfeit goods or services], the defendant shall have the burden of proof, by a preponderance of the evidence, of any [applicable] affirmative defense." *See also* 18 U.S.C. § 373(b) (defines "voluntary and com-

---

1. Although the court did not explain what legal basis there was for a generic defense of "good

faith." We return to that subject in Part III of this opinion.

plete" renunciation defense to charge of solicitation to commit a crime of violence, and states that defendant has burden of proving the defense by a preponderance of the evidence). *Compare* 18 U.S.C. § 3146(c) (defines affirmative defense to charge of failing to appear, but does not allocate to defendant burden of proving defense).

■ Nevertheless, the fact that the Constitution allows Congress or state legislatures to enact laws allocating to criminal defendants the burden of proving affirmative defenses does not mean that, absent a statute actually doing so, the burden shifts automatically. In other words, though it may be constitutionally permissible to enact a burden-shifting statute, some affirmative legislative action must trigger that shift. *See Mason,* 9 F.3d at 1350 (noting that Supreme Court has approved state *statutory schemes* that "do not require the State to disprove every affirmative defense but that instead allocate to a defendant the burden of establishing his affirmative defense by a preponderance of the evidence"). Absent such a statute, the burden of proof remains on the government to negate beyond a reasonable doubt the affirmative defense properly raised by the defendant. *See, e.g., Jacobson v. United States,* 503 U.S. 540, 549, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992) (entrapment defense); *Mullaney v. Wilbur,* 421 U.S. 684, 701, 704, 95 S.Ct. 1881, 1890, 1892, 44 L.Ed.2d 508 (1975) (heat of passion defense); *United States v. Read,* 658 F.2d 1225, 1236 (7th Cir.1981) (withdrawal from conspiracy defense); *United States v. Jackson,* 569 F.2d 1003, 1008 n. 12 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978) (self-defense). Thus, although a defendant may bear the burden of *production* as to an affirmative defense (that is, he must produce sufficient evidence to require its submission to the jury), *see Toney,* 27 F.3d at 1248, the burden of *proof* (or the burden of *persuasion* ) remains on the government to negate that defense beyond a reasonable doubt, unless a statute affirmatively reallocates that burden of proof to the defendant.

■ We have not found, nor has counsel presented, any statutory predicate for the affirmative defenses raised in this case. "Self-defense" is not defined in the federal criminal code as a defense to the crime charged, that is, the crime of being a felon in possession. Instead, some circuits have recognized it as a matter of common law.[2] *See United States v. Elder,* 16 F.3d 733, 738–39 (7th Cir.1994); *see also United States v. Singleton,* 902 F.2d 471, 472 (6th Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. Lemon,* 824 F.2d 763, 765 (9th Cir.1987); *United States v. Panter,* 688 F.2d 268, 271 (5th Cir.1982). Just as Congress has not defined the defenses by statute, neither has it enacted any statute allocating to the defendant the burden of proving the defenses asserted here. Because no law reallocated the burden of proof to Talbott, the prosecution had the burden not only of proving beyond a reasonable doubt the elements of the charged offenses, but also of negating beyond a reasonable doubt the affirmative defenses raised by him. *See Jackson,* 569 F.2d at 1008 n. 12. The district court incorrectly instructed the jury by telling them that Talbott bore the burden of proof on these defenses. Although the legislature may enact statutes shifting the burden of proof to the defendant on affirmative defenses, the district court does not have that authority. *See United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2321, 132 L.Ed.2d 444 (1995) (Rehnquist, C.J., concurring) (federal and state *legislatures* may reallocate burdens of proof).

This circuit's pattern jury instructions support our conclusion. The pattern instructions on the insanity defense reflect that Congress *by statute* shifted the burden of proof to the defendant. See 18 U.S.C. § 17(b); Federal Criminal Jury Instructions of the Seventh Circuit, Vol. III, Instructions 4.02 & 6.01a (1986).[3] In contrast, Pattern

---

**2.** In this context, the defense has been described as duress, coercion, necessity, or self-defense. Differences among these defenses and terminology do not affect our analysis. *See United States v. Nolan,* 700 F.2d 479, 484 n. 1 (9th Cir.), *cert.*

*denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983).

**3.** Instruction 4.02 provides:

Instruction 6.01, which applies in cases involving affirmative defenses not defined by statute (or where the statute describing the defense does not affirmatively shift the burden of proof to the defendant), provides that the government must negate any issues raised by an affirmative defense beyond a reasonable doubt:

> To sustain the charge of _____ the government must prove the following propositions:
>
> First:
>
> Second:
>
> Third:
>
> Fourth: (Negating any issues raised by an affirmative defense, *e.g.*, self-defense.)
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Similarly, the federal pattern instruction (issued by the Federal Judicial Center) on the defense of duress, which seems to us a close analogue to the affirmative defense raised in this case, states that "on this issue, just as on all others, the burden is on the government to prove the defendant's guilt beyond a reasonable doubt." *Pattern Criminal Jury Instructions*, Instruction 56 (1987).

The prosecutor relies on our decision in *Toney*, asserting that the jury instructions properly placed on Talbott the burden of proving the affirmative defenses he raised. Yet *Toney* does not resolve this issue. First, *Toney* involved an instruction significantly different from the one at issue here. The *Toney* instruction stated that the government had the burden of proving beyond a reasonable doubt the absence of coercion. 27 F.3d at 1248. Here, by contrast, the instruction allocated to the defendant the burden of proving his defenses by a preponderance of the evidence. Second, the authority cited in *Toney* for the proposition that a defendant bears the burden of proving an affirmative defense addresses the reallocation of the burden *by statutory enactment. Id.* at 1251. For example, as we noted above, Congress *by statute* has shifted the burden of proving an insanity defense to criminal defendants asserting that defense. *See* 18 U.S.C. § 17(b). Similarly, both *Martin* and *Patterson* involved challenges to state *statutes* shifting to criminal defendants the burden of proving the affirmative defenses of self-defense and extreme emotional distress. Finally, nowhere in *Toney* did we suggest that, absent such a statute, the defendant must prove an affirmative defense by a preponderance of the evidence. *Toney*, therefore, does not save the government in this case.

### III

The question remains whether the error requires a new trial. With respect to the conviction for carrying ammunition, it does not, and for a fundamental reason: Talbott was not entitled to a self-defense instruction (he was not under attack on the way to the courthouse), and there is no general defense of "good faith." Talbott does not explain the provenance of this defense, which neither this court nor any other court of appeals has recognized. Talbott could have told the prosecutor about the bullets; he did not have to carry them; and if a defendant can achieve his objective without violating the law, "the defenses will fail." *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 634,

---

It is a defense to the crime charged that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. This defense shall be referred to in these instructions as the defense of insanity.

The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Instruction 6.01a provides in relevant part:

If ... you find from your consideration of all of the evidence that each of these propositions [elements of the charged offense] has been proved beyond a reasonable doubt, then you should find the defendant guilty, unless you also find that the defendant has proved the defense of insanity by clear and convincing evidence, in which event you should find the defendant not guilty only by reason of insanity.

62 L.Ed.2d 575 (1980). *Bailey* deals with the defense of necessity, but the principle that everyone must comply with the law, if that can be accomplished without great cost to another vital interest, is general. So we held in *Elder*, 16 F.3d at 738, when rejecting an argument that a felon's possession of a shotgun for the purpose of turning it over to the police is not culpable. *Elder* observed that a defendant seeking to excuse such an act must show that "there are no reasonable legal alternatives to violating the law." *Ibid.* Elder himself argued necessity and self-defense, but nomenclature is unimportant. Apart from its relation to *mens rea*, therefore, "good faith" does not excuse noncompliance with a criminal statute. Talbott does not contend that the *mens rea* instruction in this case was defective. Even with the misstated burden, therefore, the instruction concerning "good faith" possession of the bullets was unduly favorable to defendant. It offered him more chance for acquittal than he was entitled to.

■ With respect to possession of the rifle, however, the law of this circuit supported a self-defense instruction. Talbott testified that he "heard the click of a knife. [Ferrell] backed me all the way around to the passenger side of the car. And I stopped at the passenger side and he was cussing and threatening to cut me open." Only at that point, Talbott testified, did he receive the rifle from his wife. A jury might reject this testimony, or conclude that Talbott retained the weapon after the danger had passed, or infer from his statement that he owned the rifle that he possessed it at other times, but these are the sort of questions the judge cannot preempt. The instruction placing the burden on defendant was therefore potentially dispositive.

The government finally contends that, even if the court did err, the error was harmless in light of the overwhelming evidence of Talbott's guilt. *Sullivan v. Louisiana*, 508 U.S. 275, 280–81, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993), holds that an erroneous definition of "reasonable doubt" cannot be harmless error, because when the judge misstates the fundamental reasonable-doubt burden for elements of the offense, an appellate court cannot be confident that the jury decided anything at all under the correct standard. The judge must send all elements to the jury, even if the evidence is overwhelming; summary judgment cannot be granted in criminal cases. This approach does not imply that an incorrect allocation of the burden of persuasion cannot be deemed harmless. Several cases hold that it can be. See *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Sullivan* requires us to distinguish an error on the fundamental reasonable-doubt standard from errors on subordinate issues; the error here is in the latter category. And this is a statutory rather than a constitutional error, for there is no constitutional objection to giving Talbott the burden on his "defenses"—and it is entirely appropriate to let the judge serve as gatekeeper for affirmative defenses (for when there is no material dispute the judge may decline the defendant's request for an instruction). Thus the standard of harmlessness is the one in Fed.R.Crim.P. 52(a) rather than the strict standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Although "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded", Fed.R.Crim.P. 52(a), the defendant prevails when the effect of the error is a close question. *O'Neal v. McAninch*, —— U.S. ——, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). If the jury believed Talbott's testimony about Ferrell's conduct and statements, it could have believed that Talbott possessed the rifle in self-defense for at least some of the time; and, if that is so, the allocation of the burden of persuasion could have assumed foremost importance in answering questions such as whether Talbott surrendered possession as soon as the exigency had passed. Talbott is therefore entitled to a new trial on the rifle charge.

## IV

■ Defendant's remaining contentions concerning the finding of guilt are unpersuasive and do not require separate discussion. But an error by the district judge leads us to

remand for resentencing, even on the ammunition count.

Talbott has a long criminal record, and the government asked the judge to sentence him as an armed career criminal under 18 U.S.C. § 924(e). He satisfies the statutory requirements. The Sentencing Guidelines prescribe two possible offense levels in U.S.S.G. § 4B1.4(b)(3):

(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

(B) 33, otherwise.

The difference between level 33 and level 34 is substantial for someone like Talbott with a Criminal History Category of VI. The range for level 34 is 262–327 months, while the range for level 33 is 235–293 months. Talbott's sentence was at the highest point in the range for level 34, so if his proper classification is level 33 he is entitled to a reduction of 34 months (unless the district judge can justify an upward departure).

Defendant starts with § 4B1.4(b)(3)(A), which refers to "a crime of violence or controlled substance offense, as defined in § 4B1.2(1)". A quick trip to § 4B1.2 reveals that being a felon in possession of guns or ammunition is not a "crime of violence". According to the prosecutor, however, a court should consider all conduct related to the unlawful possession. Talbott pointed the rifle at Fuller and threatened to kill him; more, the rifle actually discharged and wounded Fuller (although Trudy Talbott and Fuller himself had some role in that injury). Defendant was charged by Indiana with criminal recklessness, a Class D felony, for his part in these events. And *that* crime, the government concludes, is a "crime of violence" within the scope of § 4B1.2(1), making level 34 appropriate under § 4B1.4(b)(3)(A). The state charge was dismissed, but the federal judge found by a preponderance of the evidence that defendant threatened both Ferrell and Fuller with the rifle. That conduct was a "crime of violence" under § 4B1.2(1)(ii), the judge concluded, because it "present[ed] a serious potential risk of physical injury to another."

■ Like the district judge, we conclude that defendant's display of the gun, and its discharge (for which defendant may or may not have been responsible; the judge did not say), do not qualify as crimes of violence under § 4B1.2(1)(i), which covers offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another". Neither possession of a gun by a convicted felon (the crime of conviction) nor reckless endangerment under Indiana law has such an *element* of the offense. Subsection (ii) is broader, encompassing acts that create substantial risks of injury. No one can doubt that pointing rifles, tussling with them, and discharging them in close quarters creates risks, as Fuller's injury shows. See generally *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995). What the prosecutor glosses over is this commentary in Application Note 2 (italics added):

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e., expressly charged*) in *the court of which the defendant was convicted* involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another. *Under this section, the conduct of which the defendant was convicted is the focus of the inquiry.*

The only counts of which Talbott was convicted dealt with possession of the rifle and ammunition. To extirpate ambiguity, Application Note 2 continues: "The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." Unless we disregard the language of Application Note 2 limiting the inquiry to the crime of which the defendant was convicted, Talbott must be sentenced at level 33 rather than level 34. The district judge recognized that he was going against the commentary, which he called "some muddying of the legal water". Commentary to the Sentencing Guidelines is more than mud, to be filtered out. It is legally authoritative unless it con-

flicts with the text of the guideline. *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). We held in *United States v. Lee,* 22 F.3d 736, 738–40 (7th Cir. 1994), that in light of Stinson courts must respect the crime-of-conviction limitation in Application Note 2. The text of the guideline does not resolve the question whether a judge may look beyond the crime-of-conviction; the commentary settles that issue, demonstrating yet again that the Guidelines are a charge-offense rather than a real-offense sentencing system, a vital distinction that district judges must bear in mind.

If the threats to Ferrell and Fuller and the discharge of the rifle had been "expressly charged" in the federal indictment, they could have been considered under Application Note 2. But they were not mentioned in the indictment—and it is hard to see how they could have been, because they were irrelevant to the federal crime. The *state* charged Talbott with these acts, but the state's charges were not "the conduct of which the defendant was convicted". Defendant must be resentenced at level 33.

The conviction for possessing ammunition is affirmed, and the conviction for possessing the rifle is reversed. The sentence is vacated, and the case is remanded for further proceedings consistent with this opinion.