**UNITED STATES of America, Plaintiff,**

v.

**Walter L. ROBINSON, Defendant.**

**No. IP 98–124–CR H/F.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 4, 1998.

Susan H. Dowd, Office of the United States Attorney, Indianapolis, IN, for Plaintiff.

Linda M. Wagoner, Indiana Federal Community Defenders, Inc., Indianapolis, IN, for defendant.

## AMENDED ENTRY ON MOTION FOR REVOCATION OF DETENTION ORDER

HAMILTON, District Judge.

Defendant Walter L. Robinson has been indicted on a charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On August 31, 1998, Magistrate Judge Foster ordered Robinson detained prior to trial pursuant to the Bail Reform Act of 1984. On Thursday, October 15, 1998, Robinson moved for revocation of that order. The Bail Reform Act requires this court to consider such motions "promptly." 18 U.S.C. § 3145(b). The court held a hearing on the motion on Monday, October 19, 1998, and has also read the transcript of evidence presented at the hearing before Judge Foster. This entry sets forth this court's findings of fact and conclusions of law pursuant to 18 U.S.C. § 3142(i)(1). For the reasons explained below, the court denies the defendant's motion to revoke the order of detention.[1]

The government moved for detention based on 18 U.S.C. § 3142(f)(1)(A) ("crime of violence") & (f)(2) (serious risk of flight, obstruction of justice, or intimidation of witness or juror). The court considers each basis in turn.

---

1. The court initially denied defendant's motion by entry of October 22, 1998. This revised entry corrects several factual details that are not central to the court's analysis.

I. *Section 3142(f)(1)(A)—"Crime of Violence"*

The Bail Reform Act defines the term "crime of violence" as follows:

(4) the term "crime of violence" means—

(A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

(C) any felony under chapter 109A or chapter 110. . . .

18 U.S.C. § 3156(a)(4). Violations of § 922(g)(1) are not covered by either (4)(A) or (4)(C). A relatively small number of published opinions have divided over whether § 922(g)(1) falls within the (4)(B) definition of an offense that, "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Compare *United States v. Gloster,* 969 F.Supp. 92, 94–98 (D.D.C.1997) (§ 922(g)(1) not a crime of violence); *United States v. Powell,* 813 F.Supp. 903, 908–09 (D.Mass.1992) (not a crime of violence), with *United States v. Floyd,* 11 F.Supp.2d 39 (D.D.C.1998) (§ 922(g)(1) is a crime of violence), *aff'd mem.,* 1998 WL 700158 (D.C.Cir. 1998); *United States v. Hardon,* 6 F.Supp.2d 673, 676 (W.D.Mich.1998) (is a crime of violence), *rev'd mem.,* 149 F.3d 1185 (6th Cir. 1998); *United States v. Washington,* 907 F.Supp. 476 (D.D.C.1995) (is a crime of violence); *United States v. Sloan,* 820 F.Supp. 1133 (S.D.Ind.1993) (Foster, M.J.) (is a crime of violence).[2] Although most courts have decided the question in a categorical fashion, see *United States v. Carter,* 996 F.Supp. 260, 262 (W.D.N.Y.1998) (collecting cases), others have avoided categorical answers and have addressed the question based on the circumstances of the individual case as shown by the probable cause affidavit and other information available, see *United States v. Epps,* 987 F.Supp. 22, 24 (D.D.C.1997) (whether violation of § 922(g)(1) is crime of violence depends on facts of specific case); *United States v. O'Harra,* No. IP 95–175M–01 (S.D.Ind.1995) (McKinney, J.) (same).

■ Courts considering the question under the Bail Reform Act have noted that a violation of § 922(g)(1) is not a "crime of violence" for purposes of the United States Sentencing Guidelines regardless of the circumstances of individual case. See *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (deferring to commentary by Sentencing Commission on U.S.S.G. § 4B1.2(a)); *United States v. Talbott,* 78 F.3d 1183, 1189–90 (7th Cir.1996) (§ 922(g)(1) violation not a "crime of violence" for purposes of armed career offender sentencing even though defendant aimed firearm to threaten another person; § 4B1.2(1) depends on offense charged, not on actual underlying facts).

■ Whether a charged violation of § 922(g)(1) should be treated as a "crime of violence" always, sometimes, or never for purposes of the Bail Reform Act has been the subject of extensive writing in the cases cited above. Without rehearsing the debate in its entirety, this court agrees with Judge Friedman's analysis in *United States v. Gloster* and the conclusion of the Sixth Circuit in *United States v. Hardon* that § 922(g)(1) is not a "crime of violence" for purposes of 18 U.S.C. §§ 3142(f)(1)(A) and 3156(a)(4). The following considerations are critical to this court's view. First, the Bail Reform Act was upheld as constitutional because it "carefully limits the circumstances under which detention may be sought to the most serious crimes." *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Despite the enactment

---

**2.** The two circuit court decisions, by the District of Columbia Circuit in *Floyd* and the Sixth Circuit in *Hardon,* were not published, so neither is actually available to cite as authority. What is noteworthy, though, is that each decision announced the relevant conclusion in one sentence, without explanation, and the two courts reached opposite conclusions. This court has not previously encountered the phenomenon of an unpublished, unexplained circuit-split, although detention decisions must, of course, be made quickly.

of the Act, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755, 107 S.Ct. 2095. In this light, the provisions authorizing detention before trial should not be read expansively. Second, the court is not persuaded by other courts' attempts to distinguish the "crime of violence" language in the Bail Reform Act from the comparable language in the sentencing guidelines. If anything, the difference between pretrial detention and sentencing would tend to cut in favor of a broader reading of the term at sentencing than before trial. Third, where a defendant is charged with violating § 922(g)(1) and the government believes the defendant poses imminent danger to others, the Bail Reform Act provides other mechanisms for seeking pretrial detention or other means of protection. See, *e.g.*, 18 U.S.C. § 3142(f)(2) & (g)(1) (court shall consider both "nature" of charged offense and "circumstances" of charged offense). The court therefore concludes that pretrial detention of defendant is not warranted under 18 U.S.C. § 3142(f)(1)(A) on the theory that he has been charged with a "crime of violence." [3]

II. *Section 3142(f)(2)—Serious Risk of Flight*

■ The government also seeks detention of Robinson under 18 U.S.C. § 3142(f)(2) on the ground that he poses a serious risk of flight. In evaluating this argument, the court must consider the nature and circumstances of the offense charged, the weight of the evidence against the person, the nature and seriousness of the danger to any person or the community, and the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties,

past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and whether the defendant was subject to court supervision at the time of the arrest or charged offense. See 18 U.S.C. § 3142(g).

■ The nature of the offense charged does not weigh heavily in favor of detention. As explained above, this court does not view the charged offense as a "crime of violence," although in some circumstances the violation may accompany other crimes of violence. Subsection (g) specifically authorizes courts to look beyond the narrow nature of the charged offense and to look at the actual circumstances of the charged offense. The circumstances of the offense charged here simply are not clear. As stated in footnote 3 above, the government's view is that Robinson fired the firearm in question at his girlfriend. That view is based on the statement of his girlfriend to police officers at the time, but if she does not come forward (as she did not in the state court proceedings), the court has before it no real evidence supporting that view.

The weight of the evidence against Robinson on the § 922(g)(1) charge appears to be strong because the elements of such a charge—a prior felony conviction, and knowing possession of a firearm that has moved "in commerce"—appear to be so easy to prove here. When police arrived at Robinson's home after a report of shots fired, they encountered Robinson holding a knife of unidentified type and carrying another knife and a .22 caliber handgun in his pockets. Because no firearms commercially available are manufactured in Indiana, the "in commerce" element is easily proven here.

**3.** The government contends that the specific circumstances of the offense here amount to a crime of violence. The federal charge here stems from an incident on March 25, 1998, that resulted in Robinson being charged in state court with attempted battery with a deadly weapon. As far as the record before this court shows, however, it is not obvious that Robinson is the person who fired the gun that was found in his pocket when police arrived. The government's version is based on the statements of Robinson's girlfriend at the time of the incident. The state and federal

authorities are no longer in contact with her, and the attempted battery charge against Robinson was dismissed because she was not available to testify against him. In the absence of the only witness who might testify that Robinson fired the shot and that he fired it at another person, this court would not treat the § 922(g)(1) charge in this case as a "crime of violence" even under the case-by-case approach adopted in *Epps* and *O'Harra.* See also *United States v. Talbott*, 78 F.3d at 1186–88 (discussing self-defense as defense for charge under § 922(g)(1)).

The evidence of Robinson's history and characteristics is extensive. Robinson is a lifelong resident of Indianapolis and has been steadily employed in recent years. Defense counsel has represented that Robinson's employer wants to put him back to work as soon as possible. The only indications of drug or alcohol abuse in Robinson's records are misdemeanor convictions for public intoxication and possession of marijuana in 1976, when Robinson was 19 years old, and the court gives them little weight because of their age.

The government's argument is based primarily on Robinson's substantial criminal record. From 1982 through 1987, Robinson was charged with resisting law enforcement, trespass, burglary of a dwelling, resisting law enforcement by fleeing, disorderly conduct, driving with a suspended license, theft, battery on a police officer, and battery with injury. He has a total of ten misdemeanor arrests and seven misdemeanor convictions, most of them from 1982 through 1987.

That "active" period in Robinson's criminal history is capped by a 1988 conviction for involuntary manslaughter after a trial on a murder charge. Robinson killed another man with a knife, apparently after the other man had stabbed Robinson in the leg. Robinson was sentenced to four years in prison and served two. After release from that prison sentence, Robinson's record includes three other encounters with law enforcement. On January 26, 1991, he was charged with felony battery, resisting law enforcement, and disorderly conduct. He was convicted on a misdemeanor charge and sentenced to 245 days executed time. On April 9, 1994, Robinson was charged with residential entry, carrying a handgun without a license, criminal recklessness, and driving with a suspended license. The record does not indicate any conviction or sentence on those charges. Finally, there was the March 25, 1998, incident here that led to state court charges of attempted battery, criminal recklessness, and carrying a handgun without a license. As those charges were dismissed, custody was transferred to federal authorities under a

detainer that had been lodged on April 7, 1998, after the United States Attorney filed a criminal complaint and Judge Foster issued a federal arrest warrant.[4]

The record indicates seven occasions on which Robinson failed to appear for scheduled court appearances and/or had his probation revoked. See Govt. Ex. 2.

The best argument for the defendant is that the worst parts of his record, in terms of violence, failure to appear in court, and failure to comply with the terms of probation occurred during the 1980s. His record after his release from the prison sentence on the involuntary manslaughter conviction does not include any failures to appear, but it includes both the 1991 and 1994 incidents leading to arrest.

Upon reflection, however, the court believes that Robinson's record is simply too long, and includes too many violent incidents and too many failures to appear and/or comply with court orders and supervision, for the court to revoke Judge Foster's detention order. Robinson presents a serious risk of flight, and in view of the record of incidents of both flight and violent encounters with police officers, the risk of further violence in the event of flight is also serious. The court finds by a preponderance of the evidence that defendant Robinson poses a serious risk of flight, and that no condition or combination of conditions short of detention will reasonably assure his appearance at trial. Robinson's motion to revoke Judge Foster's detention order is therefore denied.

---

**4.** In light of the relationship between the state and federal charges, in the event of a conviction here, the court is likely to consider some form of "credit" on a federal sentence for the time spent in state pretrial detention on the dismissed charges.