In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1235

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC EBERT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01 CR 80—**John C. Shabaz,** *Judge.*

ARGUED MAY 23, 2002—DECIDED JUNE 26, 2002

Before FLAUM, *Chief Judge*, BAUER, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* On July 18, 2001, Eric Ebert was indicted for misdemeanor assault and interference with a federal officer, in violation of 18 U.S.C. § 111(a)(1). That charge arose from an incident that occurred on March 20, 2001, at the Federal Correctional Institute at Oxford, Wisconsin, while Ebert was an inmate there. Ebert apparently drank 1½ - 2 gallons of homemade wine on that day and fought with other inmates. Inmates who are suspected of drinking in prison are asked to provide a breath sample for determining blood alcohol level, and if they refuse they are sent to a Physician's Assistant for examination and then placed in the Special Housing Unit. Ebert refused to

submit a breath sample although he was aware there would be adverse consequences from that choice. He was taken to a Physician's Assistant's office. While there, he was combative and would not comply with instructions to sit on a table. The guards had to physically restrain him from leaving, and he refused to submit to an exam. The activities lieutenant was called to help with the situation, but Ebert also failed to heed his instruction to get on the examination table. When the lieutenant and one of the guards attempted to physically place him on the examination table, he began kicking at them and struck one of them on the shin. Ebert testified that he did not intentionally kick at them, but also testified that he feared that they were going to sedate him, and that he did not want to receive such a shot. Ebert continued to kick at all of the individuals present and at a glass cabinet, and one of the guards was sent to procure leg restraints. That guard returned with the restraints and with three other guards, and they were able to place the restraints on him. At that point, they completed the examination and escorted him to the Special Housing Unit. No one testified that any medical instruments or needles were present during the incident. At one point during the examination, Ebert stated that he "isn't going to take no shots," and the lieutenant told him that he was not going to be given a shot. Ebert was convicted on the charge and sentenced to twelve months incarceration to run consecutively to his term of incarceration for the underlying offense, followed by twelve months of supervised release.

On appeal, Ebert raises two challenges to his conviction. First, he asserts that the court erred in refusing to give his proposed jury instruction on self-defense. His theory for the instruction was that he reasonably feared that he was going to be sedated and that his actions in resisting that sedation constituted self-defense. Second, he argues that the government, in arguing against the self-defense

instruction, "stipulated" that Ebert lacked the intent to kick the officer, thus defeating its case on the merits. Neither argument is meritorious.

The statements by the government which Ebert characterizes as a stipulation are quite clearly nothing of the sort. Those remarks are as follows:

> Your Honor, what in essence the defendant must say is that he intentionally acted to prevent the reasonable belief of unlawful force. Here, the defendant's [sic] claiming none of the acts were intentional, it was all an accident. That's different than self-defense. In fact the last question I think Mr. Pagel asked him was were any of these kicks, were any of these actions intentional, and he said no.

> And I think that once you, sort of like you either say, Hey, I intentionally wanted to do it, I was trying to get out of the way, or you don't. In this case all he's saying is, Hey, I did a bunch of accidental acts while I was trying to get away. That goes to the question of intent. That's not carrying the burden of persuasion in the first instance on the affirmative defense of self-defense. So I don't believe that he's entitled to the self-defense instruction at this time.

R. 48, p. 104. That argument merely points out that Ebert's proffer of the self-defense instruction was inconsistent with his own version of the incident. In order to constitute self-defense, a defendant must have used force in reasonable fear of imminent unlawful force. Federal Criminal Jury Instructions of the Seventh Circuit 6.01 (1999); *United States v. Whalen*, 940 F.2d 1027, 1032 n.1 (7th Cir. 1991). Because Ebert denied intentionally kicking anyone, his theory of the case appeared to be to dispute that he knowingly assaulted a federal officer, whereas the self-defense instruction assumed that he acted intentionally. In characterizing the self-defense instruction as inconsistent with

Ebert's own representations, the government does not some-how stipulate that his version was correct. Instead, the government's argument merely emphasized that Ebert's request for a self-defense instruction was inconsistent with the defense Ebert presented to the jury. In pointing out that inconsistency, the government does not thereby adopt as true the defense that Ebert had presented to the jury. Ebert's interpretation of the statements by the government ignores the plain language and the context of the government's position and therefore the argument is meritless.

The defendant next complains that the court erred in refusing the self-defense instruction. Self-defense is an affirmative defense, and therefore Ebert was only entitled to the instruction if he presented sufficient evidence to require its submission to the jury. *United States v. Talbott*, 78 F.3d 1183, 1186 (7th Cir. 1996). Specifically, "[a] defendant in a criminal case is entitled to a particular theory of defense if he satisfies four requirements: (1) the defendant proposes a correct statement of the law; (2) the defendant's theory is supported by the evidence; (3) the defendant's theory of defense is not part of the charge; (4) the failure to include an instruction on the defendant's theory of defense would deny the defendant a fair trial." *United States v. Toney*, 27 F.3d 1245, 1249 (7th Cir. 1994), *citing United States v. Douglas*, 818 F.2d 1317, 1320-21 (7th Cir. 1987). The court refused the instruction because Ebert failed to introduce any evidence on one aspect of self-defense—that the action was a response to imminent unlawful force. Ebert contends on appeal that we can infer unlawful force based on "evidence that the guards did not tell him what was going on and evidence from which one could conclude that the guards were lying about the shot." That evidence, however, does not support an inference that unlawful force was being used. Ebert essentially is arguing that because the guards did not say anything about sedating him, and because one guard stated that he

was not going to get a shot, Ebert therefore could reasonably believe not only that he would be sedated, but that the sedation would be unlawful. This inference is argued despite the absence of any evidence of a needle in the room, and despite the absence of any evidence that sedation was ever contemplated by the guards. There is no reasonable basis for the inference Ebert would have us draw.

Moreover, Ebert has presented no argument that it would in fact be unlawful for the physician's assistant to sedate him in these circumstances, which further defeats his claim here. In short, Ebert failed to present any evidence that his action in assaulting the guards was in response to imminent unlawful force, and therefore the court properly refused to give the self-defense instruction. The decision of the district court is AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*